ADAMSON *v.* WOLFE, TRUSTEE.

4-5873 139 S. W. 2d 674

Opinion delivered April 15, 1940.

 

*W. Tillar Adamson, Chas. B. Thweatt* and *Ector R. Johnson,* for appellant.

*Ashley Cockrill* and *Frank J. Ortman,* for appellees.

SMITH, J. Major J. T. W. Tillar died testate June 5, 1908. He was survived by his widow, Antoinette, and the following children: three sons, Ben J., Thomas F., and Garland; three daughters, Flora V., who married Nathaniel Holmes, May T., who married Dr. D. C. Carroll and, upon his death, married W. T. Simmons, and Idee T., who married W. S. Allen. In addition, he was survived also by one grandchild, Alma Holmes Adamson, the only child of his oldest child, a deceased daughter, Calista Antoinette Tillar Holmes, who had married W. W. Holmes, a brother of Nathaniel Holmes, who had married the daughter, Flora V.

The will, copied in its entirety, reads as follows:

"I, J. T. W. Tillar, declare this to be my last will and testament.

"My wife and children are to take the personal property just as if I had died without a will, except as herein provided:

"I desire that my daughters Flora V. Holmes and May T. Tillar shall receive only the income of the part of my personal property and choses in action which would otherwise be inherited by them. I desire that all my real estate, wherever situate, shall be kept together, and the income and rents thereof applied and appropriated to the support of my children and their families; each of the children receiving an equal share of the rents and income of the real estate. To this end I constitute and appoint my wife Antoinette and my son Ben J. Tillar Trustees and Executors of this my will, and I devise and bequeath to them all of my real estate, wherever situated to have and to hold in trust to apply the

rents and profits equally among my children: Ben J. Tillar, Thomas Franklin Tillar, Garland Tillar, Flora V. Holmes, May Carroll and Idee Allen, after first applying and using whatever amount of such rents may be needed to support and maintain my wife, if her dower in my personalty should prove insufficient at any time. If any of my children die leaving no children or their descendants, then the trustees are to hold their share of the land in trust for the other children; but if any child die leaving bodily heirs, such bodily heirs shall take such deceased child's part of the real estate in fee simple.

"As to the personal property which would otherwise be inherited by my daughters Mary and Flora V., I devise that, including choses in action as part of such personalty to my wife and to my son Ben J. Tillar in trust, to keep the same invested in or loaned out on lands or good stocks applying or appropriating the income thereof to the support of said Flora V. and May during their lives, respectively, and at their death to be paid over to their children, if they have any, and if none, then to be paid over to their heirs.

"I except from the real estate above devised all the real estate which I own situated in Pine Bluff, Arkansas, which I hereby devise and bequeath to my granddaughter Alma Holmes and the heirs of her body, and if I sell any of the real estate in Pine Bluff then Alma is to receive as much as the proceeds thereof out of my personal estate.

"I have advanced to my daughter Flora V. Holmes $16,500 and to the other five children $5,000 each, all of which is charged in a book kept for that purpose, and I may advance to and charge them with more, and these advancements are to be accounted for and charged to them in dividing my personal estate.

"I request my friend W. S. McCain to settle any and all disputes among my children as to their rights under this will as I do not want them to litigate with each other in the courts over my property, and if they refuse to abide by his decision any of them so refusing shall forfeit one-half of his or her share of my real estate.

"The trustees may sell any of my real estate and re-invest the proceeds of the sale in other real estate, taking the real estate so purchased on the same trust as that which may be sold.

"My executors are not to be required to give any bond for the performance of their duties as executors, but they are to settle my estate as expeditiously as practicable.

"Witness my hand and seal this July 16th, 1901.

(signed) "J. T. W. Tillar."

It is obvious that Alma, the granddaughter, who married after the execution of the will and became Mrs. Adamson, was given no interest in the testator's real estate except the testator's real estate in the city of Pine Bluff, which was specifically devised to her. But not so as to the personal property. The real estate was devised to Ben, a son, and Antoinette, the widow, as trustees for the use and benefit of the children. The personal property was to be distributed as if the testator had died without a will except as therein stated.

After the will had been probated, the granddaughter, Alma, who had then married, took the position that, as the testator, her grandfather, had died intestate as to his personal estate except as above stated, she was entitled to share in the division thereof as the sole heir of a deceased daughter of the testator. This claim was disputed by Ben, her uncle, whose mother, the widow and co-trustee, appears to have entertained the same view. Mrs. Adamson obtained the written opinion of a leading law firm to the effect that she was entitled, subject to the widow's dower, to a one-seventh interest in the personal estate, the full share of a child; and we concur in that opinion.

The will imposed no inhibition upon the division of the personal property, and it might have been divided had any heir insisted that this be done. Had this been done, the shares falling to the daughters, Flora and May, would have been subject to the control and management of their trustees during their lives, the trust terminating upon the death of the respective beneficiaries

thereof, "and at their death to be paid over to their children, if they have any, and if none, then to be paid over to their heirs."

Litigation was threatened by Mrs. Adamson, who testified that, accompanied by her husband, she was called into a conference with her uncle Ben, who insisted that she was not entitled to share in the division of the personal estate. Children had then been born to Flora, but none to May. Ben proposed that, if she would relinquish her claim to share in the personal estate, his mother and co-trustee would devise to her the sum of $100,000, to be paid out of her dower interest, and to induce Mrs. Adamson to accept this proposition Ben stated to her that she had her contingent interest in the trust estate belonging to her aunt May. The court below held, at the trial from which this appeal comes, that this testimony was incompetent, as contradicting the terms of the quitclaim deed which Mrs. Adamson later executed. The testimony is to the effect that the one-seventh interest in the personal property which Mrs. Adamson claimed was worth much more than $100,000. In view of what will hereinafter be said, we find it unnecessary to pass upon the competency of this testimony, which, if admissible, would establish the fact that it was intended that Mrs. Adamson, by her deed, released only her claim to share as an heir in the division of the personal estate.

Pursuant to the understanding arrived at between Mrs. Adamson and Ben Tillar, Mrs. Tillar executed a will in which she devised $100,000 to Mrs. Adamson. This will contained the following recital: "Said Alma Adamson and her husband, W. C. Adamson, have been claiming that she has the right under the will of my deceased husband, J. T. W. Tillar, to participate in the estate of the said J. T. W. Tillar the same as if she were a child of said J. T. W. Tillar and equally with said children. The provision herein made for said Alma Adamson and her children is with the conviction that a proper construction of said will gives her no such right, and I direct that, before she or her children or their descendants shall participate in my estate under this will, she shall by quitclaim deed relinquish to the estate of said J. T. W. Tillar

all claim to participate under the will of my said husband, except as to the property in Pine Bluff, Arkansas, specifically given to her in said will, and if she shall not, within three months after my death, execute the deed aforesaid, or if she or her said husband shall either before or after my death commence or prosecute any proceedings looking to the enforcement of any such claim against the estate of my said husband, or should they or either of them undertake to interfere with the management of the estate of my said husband or ask the order or orders of any court relating thereto, then she shall in either of such events forfeit any right or claim to any provision made herein for the benefit of her or her children or their descendants, and all rights or property under said provision shall be held by my said trustees, Ben J. and T. F. Tillar, for the benefit of my children hereinafter named, as hereinafter provided, with respect to the residue of my property share and share alike.''

This will was dated March 12, 1910, and Mrs. Tillar died April 28, 1918, without changing the will in any respect.

The $100,000 was paid in cash upon the execution and delivery of an instrument reading as follows:

''Quitclaim Deed
''To
''Alma Holmes Adamson Estate of J. T. W. Tillar
''Know All Men by These Presents:
''That I, Alma Holmes Adamson, for and in consideration of sum of one dollar and other good and valuable consideration to me in hand paid by estate of J. T. W. Tillar, do hereby grant, sell and quitclaim unto the said estate of J. T. W. Tillar and unto the executors and administrators and heirs of said J. T. W. Tillar, all claim to participate under the will of said J. T. W. Tillar, except as to the property in Pine Bluff, Arkansas, specifically given to me in said will.
''To have and to hold the same unto the said estate of J. T. W. Tillar, his executors, administrators and heirs forever, with all appurtenances thereunto belonging.

"Witness my hand and seal on this 21st day of May, 1918.

"Alma Holmes Adamson."

On January 26, 1909, an agreement was entered into between Ben J., T. F., and Garland, sons, and Idee Allen, a daughter, of J. T. W. Tillar, and Ben and Antoinette Tillar, as trustees for Flora V. Holmes and May Carrol, that an immediate distribution of the personal estate of Major Tillar, should not be made, but that Ben J. Tillar should be constituted trustee for all the purposes of the agreement, with full control and title as trustee, with power to buy and sell real estate for the account of the trust of which he was made trustee. Under this agreement, Ben J., as trustee, assumed control of all J. T. W. Tillar's personal estate except the property assigned to the widow as dower.

Ben Tillar served as trustee from the date of the contract creating the trust in 1909 until his death in 1923, when the Tillar Fidelity Company, a corporation, was constituted trustee in succession by a district court in Texas, with the same powers possessed by Ben J. while serving as trustee.

In the discharge of his duties as trustee, Ben J. bought and sold property and acquired real estate in Texas. Later, through an order of the Pulaski chancery court of this state, R. H. Wolfe was named trustee in succession, with the same powers possessed by his predecessors. This was done in 1923.

In 1939, Wolfe, as trustee, filed, in the Pulaski chancery court, a complaint against the children of J. T. W. Tillar then living and the heirs of those who were dead. Mrs. Flora V. Holmes had died, and was survived by two daughters. May T. Simmons had died testate, without issue born to her. Mrs. Adamson and her children, two sons, were also made parties.

The complaint recited the facts herein stated, and listed the assets then in the possession of the plaintiff trustee. It was alleged that the surviving husband of May Simmons was claiming an interest in her estate under the will of his wife and the laws of the state of

Texas, where she lived at the time of her death. It was prayed that the court determine who these heirs of May T. Simmons were who were entitled to share in the estate which had been held in trust for her during her life.

A very comprehensive decree was rendered relating to the administration of the trust, which we do not review, as it is recited that "this decree is made without prejudice to the rights of defendants, Alma Adamson, Tillar Adamson, and John Adamson (sons of Alma), to share in the personal property trust created under the will of J. T. W. Tillar, deceased, as one of the heirs of May T. Simmons, deceased, which said rights are hereby reserved by the court for future determination, and nothing contained herein shall in any way affect or prevent said defendants, Tillar Adamson and John Adamson to whom their mother had assigned her interest, from contending at the final hearing of this cause that they are entitled to share in said testamentary trust, the income of which was payable to May T. Simmons, during her life, and from making any and all contentions and from contending that they are not required to share in the property now being managed by R. H. Wolfe and Tillar Fidelity Company, as trustees." This decree was rendered September 30, 1939.

A supplemental decree was rendered October 21, 1939, which dismissed as being without equity the claim of Mrs. Adamson and her sons to share in the distribution of the May T. Simmons trust estate as being among her heirs, and this appeal is from that decree.

Excellent and able briefs have been filed by opposing counsel in this case, which indicate exhaustive investigation of numerous cases in our own and in other jurisdictions bearing upon the subjects discussed.

The first of these is that of the admissibility of testimony on the part of Mrs. Adamson as to the purpose and the terms of her agreement with Ben J. Tillar, as trustee, whereby she agreed to execute the quitclaim deed herein copied, in consideration of the devise to her of $100,000 by Mrs. Antoinette Tillar.

We pretermit any discussion of this question, as it appears to us that the controlling question in the case

is whether or not Mrs. Adamson, by accepting the provisions of the will of her grandmother, Mrs. Antoinette Tillar, and by executing the quitclaim deed, lost her right to an interest as an heir of May T. Simmons. That Mrs. Adamson is an heir-at-law of Mrs. Simmons is a fact which no one questions, and she would, therefore, inherit as such the share given her by law unless she has conveyed away or relinquished that right.

Questions of laches and estoppel are raised and discussed, but these may be disposed of by saying that Mrs. Adamson could not claim to be an heir of Mrs. Simmons so long as Mrs. Simmons lived, and she did not die until September 9, 1938. Had children been born to Mrs. Simmons, and have survived her, the questions here presented could not have arisen. Mrs. Flora V. Holmes was survived by children, and no one questions that these children are her heirs, who inherited her part of the Tillar estate upon her death. But Mrs. Simmons had no children, yet the law is that this possibility is presumed so long as she lived. *Bowen* v. *Frank,* 179 Ark. 1004, 18 S..W. 2d 1037. This has always been the law, and appears to be the law wherever the common law prevails. There was no showing that at the time the quitclaim deed was executed in 1918, Mrs. Simmons had passed the age when she might have borne children, indeed, the conclusive presumption of the law is to the contrary.

Now, the will of Mrs. Antoinette Tillar required Mrs. Adamson, as a condition upon which the $100,000 should be paid her, "to relinquish to the estate of said J. T. W. Tillar all claim to participate under the will of my said husband," and pursuant to this condition Mrs. Adamson conveyed or relinquished "all claim to participate under the will of said J. T. W. Tillar, except as to the property in Pine Bluff, Arkansas, specifically given to me in said will."

Now, what were the claims which Mrs. Adamson. conveyed or relinquished? What were the matters in controversy? Not the real estate, for Mrs. Adamson had been given her share of the real estate in severalty, and

she has never, at any time, claimed any interest in the other real estate.

It is obvious that the heirs desired to keep the personal estate together and to have it managed by a trustee, but the will of Major Tillar did not so direct. But for this arrangement the personal estate would have been distributed among the heirs of Major Tillar according to the law of descent and distribution, for he had, by the express provisions of his will, died intestate as to his personal property except as above stated. Each heir would have received his or her share. The shares of Mrs. Holmes and of Mrs. Simmons would have vested in their trustees for their benefit, but they would all have had their interests in severalty. Each would have owned his own share, and no more, of the personal property. By devolution the personal property would have ceased to be a part of Major Tillar's estate, and would have become the estates of his heirs, any one of whom could have disposed of his or her respective share as they pleased, except Mrs. Holmes and Mrs. Simmons, whose shares had been given to their trustees for their benefit. The fact that a son and the widow of the testator were named as trustees does not alter the situation. The law would be the same had some trust company been named trustee.

It was a private arrangement, in no manner dependent upon the will of Major Tillar, when the personal property trust was created, and Ben J. Tillar was constituted trustee. It partook of the nature of a partnership, to which each heir had contributed his inheritance, but this was the act of the heirs, and not that of Major Tillar. Ben Tillar and his mother, as trustees for Mrs. Holmes and Mrs. Simmons, made this contribution to the enterprise for them.

The instruments herein copied show the purpose of Ben J. Tillar and his mother to have been to eliminate Mrs. Adamson and her husband from any voice in the creation and management of the proposed personal property trust. Indeed, they denied that Mrs. Adamson had any interest in the personal estate, although she had been advised—and correctly so, we think—that she

owned a one-seventh interest therein. These were the points in issue which constituted Mrs. Adamson's claims. There were no others. Who the heirs of Mrs. Holmes and Mrs. Simmons would be was a question which there was no occasion to consider. Their children would have been their heirs, if they had children. Mrs. Holmes did have children, Mrs. Simmons did not.

We think it was the purpose of the quitclaim deed to require Mrs. Adamson to relinquish and convey claims which she then had and was insisting on, and not an interest which she might or might not subsequently acquire. If this instrument, referred to as a deed, is something more than a release of claims, and is, in fact, a deed, it is only a quitclaim deed, and would not convey an after-acquired title. *Holmes* v. *Countiss,* 195 Ark. 1014, 115 S. W. 2d 553.

The case of *Blanks* v. *Craig,* 72 Ark. 80, 78 S. W. 764, appears to be in point. The facts in that case were that White conveyed to Blanks all his "interest in any lands by will or otherwise in the estate of Mary A. Sumner," the mother of White. A sister of White died, and he inherited an interest in this sister's estate as one of her heirs. It was contended that as White had conveyed to Blanks all his interest in any lands by will or otherwise in the estate of Mrs. Sumner, the interest which he subsequently inherited from his sister passed under his deed to Blanks. It was there said: "But, in order to determine what that deed conveyed, we have only to ascertain what the interest of D. E. White was in the estate of Mary A. Sumner at the time this deed was executed, for there is nothing in the language used that purports to convey more than the title he then owned. It is admitted by the agreed statement of facts that he only owned at that time an undivided one-third interest, and this is all the interest that passed by the deed. The interest that D. E. White subsequently inherited from his sister, Sallie E. Terrell, did not pass by the deed, for at the time it was executed Mrs. Terrell was living, and D. E. White had no interest in the land owned by her." See, also, *Liberty Central Trust Co.* v. *Vaughan,* 167 Ark. 219, 267 S. W. 361; *Walker* v.

*Wilmans,* 176 Ark. 251, 3 S. W. 2d 303; *Hurst* v. *Hilder-brandt,* 178 Ark. 337, 10 S. W. 2d 491; *National Bank of Commerce* v. *Ritter,* 181 Ark. 439, 26 S. W. 2d 113; *Deener* v. *Watkins,* 191 Ark. 776, 87 S. W. 2d 994.

Here, Mrs. Adamson was claiming, when she executed the quitclaim deed, only the interest which she had inherited as the only heir of her mother, a deceased daughter of Major Tillar, with the incidental right to have it apportioned to her or to participate in the control of that interest. She was not then an heir of either Mrs. Holmes or of Mrs. Simmons, as both these aunts were then living, and she would never be an heir of either if they were survived by children, a possibility which the law conclusively presumed and which occurred in the case of Mrs. Holmes.

The noun "claim" is defined in Webster's New International Dictionary as follows: "A demand of a right or a supposed right; a calling on another for something due or supposed to be due; an assertion of a right or fact. A right to claim something; a title to any debt, privilege, or other thing in possession of another; also, a title to anything which another should give or concede to, or confer on, the claimant."

In defining the word "claim" as a noun it is said in 14 C. J. S., p. 1182, that "The term has been specifically defined as meaning a demand of a right, or of an alleged or supposed right; a calling on another for something due or supposed to be due; an active assertion of right and the demand for its recognition; an assertion, demand, or challenge, of something as a right; . . ."

The only claim which Mrs. Adamson had or was asserting, when she executed the quitclaim deed, was that she be allowed to stand in her mother's place in the distribution of the personal estate of her grandfather, as to which he had died intestate so far as her "claim" was concerned, and only the distribution of the personal estate was required to vest that interest in her in severalty, and we have concluded that her deed or release conveyed no other interest.

The decree of the court below will, therefore, be reversed and the cause will be remanded with directions to recognize Mrs. Adamson as an heir of Mrs. Simmons.

It appears that the husband of Mrs. Simmons has a suit pending in Texas, in which he claims an interest in his wife's estate under her will and under the laws of Texas. We cannot anticipate the outcome of that case. We do not know what property Mrs. Simmons had accumulated and owned at the time of her death in addition to the trust estate created by the will of Major Tillar for her benefit. But under this will Mrs. Simmons took only a life estate in this trust created for her benefit, which, at her death, passed to her heirs, Mrs. Adamson being among that number. This litigation involves the winding up of the personal property trust which Ben Tillar created, and to which appellee, Wolfe, succeeded; but the question involved on this appeal is disposed of when we hold, as we do, that Mrs. Adamson is entitled, as an heir-at-law of Mrs. Simmons, to share in the distribution of the trust estate created for Mrs. Simmons' benefit.

GRIFFIN SMITH, C. J., and McHANEY and MEHAFFY, JJ., dissent.

McHANEY, J., (dissenting). The fundamental error in the majority opinion, in my judgment, is the assumption that Mrs. Simmons took title to the fee in the personal property trust created by the will of Major Tillar for her benefit. If that assumption be false, and it is, as I shall undertake to demonstrate, then the majority necessarily reach a false conclusion. If Mrs. Simmons took only a life estate in said trust, the remainder interest passed or was controlled by the will of Major Tillar, and such trust was, at her death, still a part of the estate of Major Tillar, which was released and quitclaimed by Mrs. Alma Adamson in the deed set out in the majority opinion, and prevents her and appellants, her assignees, from recovering any part thereof.

It is conceded that Mrs. Adamson is a collateral heir of Mrs. Simmons. But Mrs. Simmons died testate and under her will Mrs. Adamson was given certain pieces

of jewelry. All the rest of her estate was devised to her husband, W. T. Simmons, and further designated him as her appointee to receive one-sixth of the annual net income during his life from the trust estate created by the will of her mother, Antoinette Tillar, and at his death to Mrs. Adamson in fee simple. She made no attempt to convey by will or otherwise either the income from or the corpus of the personal property trust created for her benefit by the will of her father, Major J. T. W. Tillar. Mrs. Simmons realized that the title to this trust passed on her death by the will of her father and that her own estate could not be augmented by the corpus or principal thereof, and made no attempt to convey it in her will, and it cannot pass by the laws of descent and distribution because the title thereto in fee never vested in her. She was entitled to the income from it for her life only, which is nothing more than a life estate in the trust. Under the will of Major Tillar, the title in fee to the trust would have gone to the children of Mrs. Simmons, if she had had children, but if she died without children, then under the same will, the fee title passed to Mrs. Simmons' heirs, one of which is Mrs. Adamson. The title to the fee in this trust passed to the collateral heirs of Mrs. Simmons by the will of Major Tillar, not by inheritance from Mrs. Simmons, but by virtue of the control over it retained by him and the directions given in his will.

That Mrs. Simmons took only a life estate in the trust created by Major Tillar's will cannot be doubted. The very term "life estate" contradicts the conception of a fee title. In 69 C. J., p. 532, it is said: "A gift to one 'in trust for his heirs' gives him a life estate."

In *Kent* v. *Morrison,* 153 Mass. 137, 26 N. E. 427, 10 L. R. A. 756, 25 Am. St. Rep. 616, it was held: "If . . . the estate given to the devisee is only for life, although coupled with a power in the devisee of disposing of the fee, either by deed or will, or both, then, if this power is not executed, the remainder in fee, after the termination of the life estate, is a part of the estate

of the testator, and will pass under the will of the testator.''

In perhaps the leading case of *Jackson* v. *Robins,* 16 Johns (N. Y.) 537, Chancellor Kent laid down the rule as follows: ''We may lay it down as an incontrovertible rule, that where an estate is given to a person generally, or indefinitely, with a power of disposition, it carries a fee; and the only exception to the rule is, where the testator gives to the first taker an estate for life only, by certain and express words, and annexes to it a power of disposal. In that particular and special case, the devisee for life will not take an estate in fee.'' This rule was changed by subsequent statute in N. Y. See *Barr* v. *Howell,* 85 Misc. 330, 147 N. Y. S. 483. See, also, § 1639, 69 C. J., p. 569.

We call attention to these cases of the devise of a life estate, coupled with the power to convey, to show the extent to which the courts have gone to carry out the testator's intent as expressed in the will. In the will of Major Tillar, Mrs. Simmons was given no control whatsoever of the estate conveyed in trust for her use and benefit, and, of course, no power of disposition either by deed or will. Being a life estate, only the income belonged to her.

The majority say the case of *Blanks* v. *Craig,* 72 Ark. 80, 48 S. W. 764, ''appears to be in point.'' But, in what way it appears to be in point, I am unable to perceive. There, Daniel E. White conveyed to Blanks his ''interest in any lands by will or otherwise in the estate of Mrs. Mary A. Sumner.'' After this deed was executed his sister, Mrs. Terrell, died intestate and without issue and Daniel E. White inherited one-half of her estate which came by inheritance from the estate of her mother, Mrs. Mary A. Sumner. Blanks claimed that, under the deed of Daniel E. White, he was entitled to the interest in the Terrell estate which Daniel E. White would have inherited but for his deed to him. It was under this state of facts that the court held as it did in the quoted portion of the opinion set out by the majority. While Mrs. Sumner left a will, she did not create a trust for the

benefit of Mrs. Terrell, and the will was afterwards found to be invalid and of no effect as to the lands there in controversy. Mrs. Terrell took a vested fee interest in the estate of her mother, an interest which passed to Daniel E. White on her death as one of her heirs, and this was some time after his deed to Blanks. The court correctly held that his deed to Blanks did not convey his interest in Mrs. Terrell's estate. The distinction between that case and this is that Mrs. Terrell took the fee and Mrs. Simmons took only a life estate in the trust created by Major Tillar's will, the corpus of which passed by his will, and not by inheritance from Mrs. Simmons.

That Mrs. Adamson's interest in this trust fund created for Mrs. Simmons was alienable there can be no doubt. We so held in a similar situation in *Bowen* v. *Frank,* 179 Ark. 1004, 18 S. W. 2d 1039.

By the terms of Mrs. Antoinette Tillar's will the claim of Mrs. Adamson to share in the estate of Major Tillar is set out, and a bequest of $100,000 in trust is made to her and her children, conditioned as follows: "Before she or her children, or their descendants shall participate in my estate under this will, she shall by quitclaim deed relinquish to the estate of J. T. W. Tillar all claim to participate under the will of my said husband except as to the property in Pine Bluff, Arkansas, specifically given to her in said will."

In order to obtain this $100,000 bequest, Mrs. Adamson executed a quitclaim deed, relinquishing to "the said estate of J. T. W. Tillar and unto the executors and administrators and heirs of said J. T. W. Tillar," except as to the Pine Bluff property.

After the death of Mrs. Simmons, Mrs. Adamson undertakes to claim under the will of Major Tillar through heirship of Mrs. Simmons. This she cannot do for two reasons: because she conveyed her interest therein and received a bequest from her grandmother of $100,000 for so doing. This appears to me to be a good and valuable consideration, and if the title to the Major Tillar trust ever vested in Mrs. Simmons then it passed

by her will, and not by inheritance. Mrs. Simmons gave all her property to her husband except, as above stated, certain articles of jewelry given to Mrs. Adamson, and the remainder interest as aforesaid, as shown by her will.

For these reasons, I respectfully dissent from the holding of the majority, and am authorized to say that the Chief Justice and Mr. Justice MEHAFFY concur in this dissent.