BURMEISTER (Melvin), Executor (ESTATE OF ELSIE BURMEISTER), Plaintiff and Appellant, v. SCHULTZ and wife, Defendants and Respondents: BURMEISTER and others, Impleaded Defendants and Respondents.

*November 28—December 22, 1967.*

For the appellant there was a brief by *Benson, Butchart & Haley* of Racine, and oral argument by *Donald A. Butchart*.

For the respondents there was a brief by *Vaudreuil & Vaudreuil* of Kenosha, and oral argument by *Leo E. Vaudreuil*.

HANLEY, J. The primary issue presented on the instant appeal is whether the agreement executed by the parties released the obligations created by the note and mortgage.

The trial court construed the agreement to release the note and mortgage because in its opinion ". . . a mortgage is such an interest in property that it must be recorded in the same manner that a conveyance is recorded. It does give a certain type of real property right. . . . A mortgage such as the one involved here becomes

a claim on the land and if properly recorded binds every purchaser with the knowledge that there is a claim on the land. . . ."

Another reason given by the trial court for its construction was that it would be unfair and inequitable to interpret the contract as a forgiveness of Melvin and Tyrone Burmeister with respect to their obligations and then to interpret identical language as not forgiving the Schultzes of their debt.

We do not think the language of the agreement whereby the parties "relinquish any claims they might have in said real estate" can be held to release the note and the mortgage. The note is a chose in action and therefore personalty. In *Estate of Hart* (1925), 187 Wis. 629, 205 N. W. 386, the court held that an interest in a mortgage is an interest in personalty and that therefore the statute of uses and trusts has no application to a trust in a fund secured by a mortgage. In *Tobin v. Tobin* (1909), 139 Wis. 494, 121 N. W. 144, the court held that a mortgage given to secure a note is personal property. Sec. 235.08, Stats., does not require a contrary result, for it existed in substantially its present form at the time the above cases were decided.

There is other language in the agreement which might arguably release the mortgage, *i.e.,* ". . . release . . . of all claims and demands, actions and causes of actions, of every kind and nature concerning the conveyance of the real estate . . ." The construction of this clause was not argued in the trial court or here. But appellant in arguing the construction of the clause "a claim in real estate" has contended that a note or mortgage is not a claim because the word implies that ownership of a right is in dispute and that the words "claim" and "cause of action" are synonymous. Since Grace and Lloyd Schultz never disputed the validity of the note and mortgage, the argument runs, the agreement could not possibly have released them from payment.

Webster's Third International Dictionary defines "claim" as the word is used in the agreement as "a demand of a right or supposed right;" "a calling on another for something due or supposed to be due." See *Adamson v. Wolfe* (1940), 200 Ark. 360, 139 S. W. 2d 674; *Estate of Cutting* (1916), 174 Cal. 104, 161 Pac. 1137. The fact that the definition includes demands of rights and demands of supposed rights indicates the word's neutrality on that point. We feel, therefore, that the construction appellant contends for cannot be put on the word "claim," and that a note and a mortgage whose validity are not in dispute can be the subject of a claim, as is often the case when a mortgage is foreclosed against a party who cannot afford to continue the payments. Likewise, the subject of a "demand" or "cause of action" can either be or not be in dispute.

The question remains whether the note and mortgage are "claims and demands . . . *concerning the conveyance of real estate.*" (Emphasis supplied.) In a narrow sense, perhaps, the italicized language might limit "claims and demands" to those affecting the original transfer of property to the Schultzes. The note and mortgage would not then be claims concerning the conveyance of real estate because they merely evidence a claim for money, which can be sued upon and the mortgage foreclosed without affecting the validity of the original conveyance. In the broader sense, the note and mortgage arise out of the same transaction as the conveyance; in fact, they are the consideration for the conveyance, in which sense they can be the subject of a claim, demand, or cause of action "concerning the conveyance of the real estate." It is interesting to note the clauses releasing Melvin and Tyrone, who paid no consideration, are identical to the clause releasing the Schultzes.

In *Georgiades v. Glickman* (1956), 272 Wis. 257, 264, 265, 75 N. W. 2d 573, Mr. Justice CURRIE quoted the following authorities on the subject of ambiguity in contracts:

"3 Williston, Contracts (rev. ed.), pp. 1807, 1808, sec. 629, suggests that the test, of whether a written contract is so unambiguous as not to render admissible any testimony of surrounding circumstances, is dependent on whether the words used are so clear that the offered evidence 'would not persuade any reasonable man that the writing meant anything other than the normal meaning of its words would indicate.' The author quotes with approval the following statement made by Judge LEARNED HAND in *Eustis Mining Co. v. Beer, Sondheimer & Co.* (D. C. 1917), 239 Fed. 976, 985:

" 'All the attendant facts constituting the setting of a contract are admissible, so long as they are helpful; the extent of their assistance depends upon the different meanings which the language itself will let in. Hence we may say, truly perhaps, that, if the language is not ambiguous, no evidence is admissible, meaning no more than that it could not control the sense, if we did let it in; indeed, it might "contradict" the contract—that is, the actual words should be remembered to have a higher probative value, when explicit, than can safely be drawn by inference from surroundings. Yet, as all language will bear some different meanings, some evidence is always admissible; the line of exclusion depends on how far the words will stretch, and how alien is the intent they are asked to include.'

"Professor Corbin, in his recent excellent work on the law of contracts, states (3 Corbin, Contracts, p. 70, sec. 542):

" 'There are, indeed, a good many cases holding that the words of a writing are too "plain and clear" to justify the admission of parol evidence as to their interpretation. In other cases, it is said that such testimony is admissible only when the words of the writing are themselves "ambiguous." *Such statements assume a uniformity and certainty in the meaning of language that do not in fact exist; they should be subjected to constant attack and disapproval.'* (Emphasis supplied.)

"Among the surrounding circumstances that are admissible for the purpose of interpreting the language of a contract are the *'acts and statements of the parties antecedent to and contemporaneous with the making of the contract.'* 3 Corbin, Contracts, p. 72, sec. 543."

We are of the opinion that the release agreement is ambiguous on the question whether the note and mortgage

are released and that the judgment should be reversed and the cause remanded to the trial court for a new trial to ascertain the intent of the parties in making the agreement.

Appellant also contends that if the agreement is construed to release the note and mortgage, enforcement as to Donald, Roland, and Evelyn Kriska is unconscionable because they would be giving up far more than they would receive. Each would be releasing a claim to one-sixth of the unpaid balance of the note in addition to any claim they might have to the property given by Elsie Burmeister to Melvin and Tyrone Burmeister; and they would be agreeing not to surcharge the executor for failure to rent certain property. In return their share of the estate would be released from the payment of executor's fees based on sales of real estate and from the payment of estate taxes on the property conveyed to Melvin and Tyrone.

In *Frieders v. Estate of Frieders* (1923), 180 Wis. 430, 193 N. W. 77, the plaintiff released a workmen's compensation insurer of a claim later judicially determined to be $4,000 for sums totaling $163.80. The court noted that a release executed without fraud, coercion, or undue influence, even though it may be improvident, cannot be ignored for the reason that it is inadequate. No fraud is here alleged. Furthermore, the agreement is under seal; and, therefore, consideration is presumed. Sec. 891.27, Stats. No issue regarding the adequacy of consideration was raised below. Nor can it be ascertained whether the consideration for the agreement is adequate or not from the present state of the record, even though there has been a trial. The parties with respect to whom the consideration is supposedly inadequate have not taken an appeal. For these reasons we see no cause to upset the validity of the agreement for inadequacy of consideration.

Finally, although the question has not been raised on appeal, we are of the opinion that the agreement is valid without the signature of the executor in his capacity as such and without the approval of the probate court. The creditors have been paid. Sufficient cash is on hand to meet the estate tax liabilities. The beneficiaries under the will, all of whom are parties to the agreement, are the only ones beneficially interested in the estate property. They may convey equitable title, and the executor, as a kind of trustee, must convey the legal title accordingly. *Estate of North* (1943), 242 Wis. 72, 7 N. W. 2d 705; *McKeigue v. Chicago & N. W. R. R.* (1907), 130 Wis. 543, 110 N. W. 384. We see no reason why the principle should not extend to release agreements.

We thus consider the agreement not to be invalid because of any inadequacy of consideration nor because of the failure of the executor to sign nor the probate court to approve.

*By the Court.*—Judgment reversed and cause remanded for a new trial consistent with the opinion.