In the Matter of Robert Charles ISBELL and Lorraine Ingrid Isbell, Debtors.

Jerry J. ARMSTRONG, Trustee of the Estate of Robert Charles Isbell, and Lorraine Ingrid Isbell, Plaintiffs,

v.

Robert Charles ISBELL, Lorraine Ingrid Isbell, John F. Evans, Barbara Evans, Bank of Stoddard, a Wisconsin Banking Corporation, Defendants.

Bankruptcy Nos. 79–00685, 79–00686.

United States Bankruptcy Court, W.D. Wisconsin.

March 4, 1983.

James W. Bannen, Bannen & Bannen, LaCrosse, Wis., for defendant Bank of Stoddard.

Duane M. Peterson, Peterson & Thompson, Ltd., Winona, Minn., Bruce J. Brovold, Arcadia, Wis., for defendants John and Barbara Evans.

Jerry J. Armstrong, Madison, Wis., for plaintiff.

Galen W. Pittman, Johns, Flaherty & Gillette, S.C., LaCrosse, Wis., for defendants Robert and Lorraine Isbell.

ROBERT D. MARTIN, Bankruptcy Judge.

In 1972, a partnership consisting of the defendant Robert C. Isbell (hereinafter "Isbell") and Eugene Fanello, purchased a tavern in La Crescent, Minnesota, known as the Crescent Inn, from John and Judith Dickson under a purchase agreement and a contract for deed (hereinafter "the 1972 agreements"). In 1973, the partnership was terminated and Fanello assigned all right, title and interest in the Crescent Inn real and personal property to Isbell who thereupon became sole owner of rights under the 1972 agreements. While owned by Isbell, the Crescent Inn served workers and fishers who preferred country and western music by day and a younger clientele who preferred rock music after 8:00 p.m.

On October 17, 1975, Isbell agreed to assign all of his interest in the Crescent Inn, real and personal property and all rights in the 1972 agreements to the defendant John P. Evans (hereinafter "the 1975 agreement"). In conjunction with the 1975 agreement the Dicksons released Isbell from all liability under the 1972 agreements. To secure payment of the balance of the purchase price for the 1975 agreement, John and Barbara Evans gave Robert and Lorraine Isbell a mortgage note dated October 17, 1975 in the sum of $33,000.00.

To further secure performance of the 1975 agreement and the payment of the $33,000.00 mortgage note, Evans gave Isbell the following:

a. A security interest in the business equipment and personal property at the Crescent Inn,

b. A mortgage on the real estate of the Crescent Inn, and

c. A first mortgage on Evans' real estate located in Waukesha County, Wisconsin.

Isbells recorded the mortgages in the counties where the properties are located, and

filed a financing statement with the Secretary of State of Minnesota.

On March 14, 1977 the Isbells assigned to the Bank of Stoddard the October 17, 1975 mortgage note given them by Evans, (hereinafter "the bank assignment") to secure payment of a loan of $15,000.00 from the Bank to Isbells made that day. The bank assignment stated that the Isbells assigned a real estate mortgage and security agreement to the Bank. The assignment of the Isbells' security interest in the personal property at the Crescent Inn was not perfected by filing a financing statement with the Secretary of State of Minnesota. Nor was the assignment of the Isbells' mortgage against the Crescent Inn recorded in the office of the Register of Deeds for Houston County, Minnesota. However, after taking no action for two years, the Bank recorded an assignment of the mortgage on the Waukesha County real estate with the Register of Deeds for Waukesha County, on May 17, 1979.

Twenty days later on June 6, 1979 the Isbells filed their voluntary petitions in bankruptcy. The amount owed to the Isbells by Evans on the October 17, 1975 mortgage note was stipulated to be $28,408.48. Evans has made no payments on the debt to Isbells since the date the Isbells filed their bankruptcy petitions. As of February 23, 1982, 32 monthly payments of $400.49 each were due under the terms of the October 17, 1975 mortgage note and had not been paid to Isbells. However, Evans has been making monthly payments to an escrow account, which totalled $13,185.06 as of February 23, 1982. The right to receive those escrowed funds is dependent on the outcome of this proceeding.

On the basis of the recorded assignment of mortgage in Waukesha COunty, the Bank claims to have perfected a security interest to the extent of $12,941.16 plus interest in the $28,408.48 owed Isbells by Evans on the March 17, 1975 mortgage note. Except the trustee, no party to this action claims to be entitled to the difference between the $28,408.48 owed by Evans to Isbells at the time they filed their petitions and the $12,941.16 portion thereof claimed by the Bank. However, Evans by his counterclaim seeks to setoff an unspecified amount against the $28,408.48 he owes the Isbells.

The basis of Evans' asserted right of setoff is his claim of damages suffered from the Isbells' alleged breach of an agreement not to compete. Paragraph 8 of the 1975 agreement is a non-compete clause which provides:

> As additional consideration for this agreement, Isbell, and his wife, agree that they shall not own, manage, operate or in any way be involved or related to the operation of a tavern, night club, or business of a like nature as the Crescent Inn, either directly or indirectly, and agree not to be involved in any business which dispenses beer, liquor, or alcoholic beverages, or any type of restaurant business which dispenses beer or alcoholic beverage, and generally, not to compete in any way with Evans in the conduct of the business of the Crescent Inn. This agreement not to compete shall be effective for a period of five years from October 6, 1975, and shall extend to physical limits of the City of La Crescent, Minnesota, and a radius of ten miles extending from the city limits of La Crescent.

After assigning his interest in the Crescent Inn to Evans, Isbell worked as food manager and as general manager of the Townhouse, a restaurant which his parents purchased in a different part of La Crescent. His responsibilities were primarily related to food service but on occasion he helped briefly at the bar. Under his general managership and with his physical presence notable, the lower portion of the premises was given over to use as a discotheque which attracted many of the young people who may have previously patronized the Crescent Inn after 8:00 p.m.

On March 2, 1978 the district judge, Third Judicial District, Houston County, Minnesota entered a partial summary judgment against the Isbells finding them in violation of paragraph 8 of the 1975 agreement. There was no evidence presented at trial in

this case which indicates that the legal determination of the Minnesota district judge should be upset. The sole question that remains for this court in connection with Evans' claim under paragraph 8 of the 1975 agreement is the amount of damages which Evans should be allowed to offset against his indebtedness to the Isbells.

The right to setoff under the Bankruptcy Act which Evans seeks to invoke is set out in § 68 of the Bankruptcy Act which states:

§ 68. Set-offs and Counterclaims. a. In all cases of mutual debts or mutual credits between the estate of a bankrupt and a creditor the account shall be stated and one debt shall be set off against the other, and the balance only shall be allowed or paid.

b. A set-off or counterclaim shall not be allowed in favor of any debtor of the bankrupt which (1) is not provable against the estate and allowable under subdivision g of section 57 of this Act; and (2) was purchased by or transferred to him after the filing of the petition or within four months before such filing, with a view to such use and with knowledge or notice that such bankrupt was insolvent or had committed an act of bankruptcy.

This provision requires an initial determination of the amount of Evans' provable and allowable claim. Evans was listed as unsecured creditors (disputed) on Isbells' bankruptcy schedule A–3. Evans did not file a complaint with the Bankruptcy Court to determine the dischargeability of the Isbells' debt, pursuant to Section 17c(2) of the Bankruptcy Act. The Isbells were discharged from their debts by a discharge dated September 25, 1979. On August 12, 1981 Evans filed a claim for the sum of $40,000.00 as an unsecured claim for breach of the non-compete term of the 1975 agreement. Such a claim is undisputably provable in this bankruptcy. The amount allowable must, however, be determined.

■ The general rule of damages in cases where one party has breached a contract not to compete, is that the non-breaching party is entitled to recover the loss he has sustained which naturally results from the breach, *Bradford & Carson v. Montgomery Furniture Co.,* 115 Tenn. 610, 92 S.W. 1104 (1906), *Peltz v. Eichele,* 62 Mo. 171 (1876). The damages are measured by the loss to the buyer, not the gain to the seller, although these figures may coincide, *Noble v. Wilder,* 25 Tex.Civ.App. 31, 61 S.W. 325 (1901). If no loss can be shown to have been caused by the breach, the buyer is entitled only to nominal damages. *Bradford & Carson, supra, McGinnis v. Hardgrove,* 163 Mo.App. 20, 145 S.W. 512 (1912). The buyer of the business is entitled to recover all damages which have accrued up until the time of the trial, *Kochenrath v. Christman,* 180 Ky. 799, 203 S.W. 738 (1918).

■ Uncertainty of the amount of damages appears to be a common problem in actions for breach of contracts not to compete. Most courts do not require damages to be proven to a mathematical certainty, but will allow inferences to be drawn from circumstantial evidence. *Salinger v. Salinger,* 69 N.H. 589, 45 A. 558 (1899), *Scotton v. Wright,* 32 Del. 192, 121 A. 180 (1923), *Galucha v. Naso,* 147 Iowa 309, 126 N.W. 146 (1910), *Hedrick v. Perry,* 102 F.2d 802 (10th Cir.1939). To quote one such case:

Facts, circumstances, and data appear from which the jury were warranted in finding the amount of damages they did. In cases of this character it is not required that proof of the extent of the damages be definite and specific. There must be proof of injury, but the jury may find the amount of the damages by drawing reasonable inferences from the facts, circumstances and data furnished by the evidence.

*Bowling v. Wallas,* 72 Va. 638, 78 S.E. 791–92 (1913). As the court in *Kochenrath v. Christman,* 180 Ky. 799, 203 S.W. 738, 740 (1918) noted: "the mere difficulty of ascertaining the amount of damages affords no reason for refusing damages."

The plaintiff must, however, prove his damages with reasonable certainty. *Shaw v. Jones, Newton & Co.,* 133 Ga. 446, 66 S.E. 240 (1909), *McGinnis, supra, Hughes v. Ire-*

*land,* 74 Pa.Super. 518 (1926). Some courts go so far as to state that an injunction is the only proper remedy, since damages are so difficult to prove.

Lost profits are generally recognized as a proper element of recovery for breach of a covenant not to compete. *Hedrick v. Perry,* 102 F.2d 802 (10th Cir.1939), *Long v. O'Bryan,* 28 Ky.L.Rep. 1062, 91 S.W. 659 (1906). Only those losses properly attributable to defendants engaging in a competing business can be recovered. *Scotton, supra.* However, it is proper to admit evidence that profits have fallen off, even it could be attributed to another source, if it is emphasized that the trier of fact must be satisfied that the competition was the cause of the decline, *Dethlefs v. Tamsen,* 7 Daly (N.Y.) 354 (1878).

The only evidence presented by Evans was general in character and suggested that business was less than expected and diminished further as the discotheque business grew. There was in addition evidence that the decrease in business at the Crescent Inn was coincidental with an increase in the Minnesota drinking age from 18 to 19, and the opening of one or more bars which were closer to the Crescent Inn than the establishment managed by Isbell.

I am satisfied that Evans is entitled to some damages due to Isbells' competition but I am not satisfied that those damages ought to be very great. That portion of Evans' business losses caused by Isbells' competition would have been relatively slight. Reasonable damages under these standards are found to be $7,500.00. A claim in that amount is allowed to Evans.

The next question to be addressed is the amount of the claim Isbells had under the 1975 agreement against which Evans may exercise his asserted right of setoff. The right to setoff may only be exercised where the debts are mutual: "something

must be 'owed' by both sides." 4 *Collier on Bankruptcy,* ¶ 553.04 at 553–15 (15th ed. 1982).[1] In a bankruptcy, the debts to be set off must be owed by both sides on the date the bankruptcy is filed. *In Re Princess Baking Corp.,* 6 B.C.D. 842, 844, 5 B.R. 587 (Bkrtcy.S.D.Cal.1980). This requirement of temporal mutuality can best be demonstrated by a situation in which a bank is not allowed to set off an unmatured certificate of deposit in the debtor's name against the debtor's defaulted loan obligation. *In Re Hawes,* No. 77–01136 (Bkrtcy.W.D.Wis. May 28, 1980).

In the present case, under the 1975 agreement Evans was obligated to make monthly payments to Isbells. However, on the date this case was commenced the entire debt was not due. All that was owed to Isbell was the amount of any installments which had become due, but remained unpaid. There is no evidence that any payments had in fact been missed. Evans cannot, therefore, use his damage claim which arose before Isbell filed his bankruptcy petition as a setoff of his obligation to make payments to Isbell which were not due until after that date. *See Mutual Trust Life Ins. Co. v. Wemyss,* 309 F.Supp. 1221, 1232 n. 18 (D.Me.1970); *Avant v. United States,* 165 F.Supp. 802, 805 (E.D.Va.1958). Thus Evans has an allowed claim of $7,500.00 as a result of Isbells' breach of the non-compete clause, but he may only recover that amount as a claim against the estate, not as a setoff against the amount due Isbells.

In the absence of a right in Evans to exercise an offset against his obligation to pay under the 1975 agreement, the only remaining claimants to the proceeds of that agreement are the trustee and the Bank. The Bank claims the funds by virtue of the bank assignment. The trustee contends that the bank assignment was not completed until the eve of bankruptcy, and that the

---

1. This requirement is codified with great clarity in the Bankruptcy Code which provides at 11 U.S.C. § 553(a):

    Except as otherwise provided in this section and in sections 362 and 363 of this title, this title does not affect any right of a creditor to

offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of this case, except to the extent that—

Bank's recording of the assignment of mortgage was a preferential transfer, voidable under § 60(b) of the Bankruptcy Act.

Although both the trustee and the Bank have focused on the recording of the mortgage assignment, it is by no means clear whether that recording is relevant to a determination of rights in the note proceeds. The Bank claims to rely on the recording for its secured status. The trustee cites § 60(a)(2) of the Bankruptcy Act for the proposition that a transfer is deemed made when perfected. However, the parties appear to be mistaken in their assumption that recording is the appropriate manner of perfecting.

It is not clear that the Wisconsin conveyancing and recording acts are applicable to the assignment of note and mortgage. Wis. Stat. § 706.01 provides "subject to the exclusions in sub (2), this chapter shall govern every transaction by which any interest in land is created, aliened, mortgaged, assigned or may be otherwise affected in law or equity." The Wisconsin court has held that a mortgage on realty given to secure a note is personal property, notwithstanding provisions of the statute regulating the form of mortgage. *Burmeister v. Schultz*, 154 N.W.2d 770, 37 Wis.2d 254 (1967). *See also Tobin v. Tobin*, 139 Wis. 494, 121 N.W. 144 (1909). Since the statute applies only to an "interest in land" the assignment of a mortgage which is personal property, would appear to fall outside of the conveyancing chapter.

As personal property, and specifically because of the nature of the instruments involved, the bank assignment would appear to come under Wis.Stat. § 409.102(2), which provides:

This chapter applies to security interests created by contract including pledge, assignment, chattel mortgage, chattel trust, trust deed, factor's lien, equipment trust, conditional sale, trust receipt, other lien or title retention contract and lease or consignment intended as security. This chapter does not apply to statutory liens except as provided in s. 409.310.

The immediately following subsection, 409.-102(3), suggests that the fact that the transaction involves a mortgage, does not take it outside of Article 9:

The application of this chapter to a security interest in a secured obligation is not affected by the fact that the obligation is itself secured by a transaction or interest to which this chapter does not apply.

Comment # 4 to 9.102(3) is instructive in the present case:

4. An illustration of subsection (3) is as follows:

The owner of Blackacre borrows $10,000 from his neighbor, and secures his note by a mortgage on Blackacre. This Article is not applicable to the creation of the real estate mortgage. Nor is it applicable to a sale of the note by the mortgagee, even though the mortgage continues to secure the note. However, *when the mortgagee pledges the note to secure his own obligation to X, this Article applies to the security interest thus created, which is a security interest in an instrument* even though the instrument is secured by a real estate mortgage. This Article leaves to other law the question of the effect on rights under the mortgage of delivery or non-delivery of the mortgage or of recording or nonrecording of an assignment of the mortgagee's interest. See Section 9–104(j) (emphasis added).

However, Wis.Stat. 409.104(10) [9–104(j)] provides:

This chapter does not apply: ... (10) Except to the extent that provision is made for fixtures in s. 409.313, to the creation or transfer of an interest in or lien on real estate, including a lease or rents thereunder and including an interest in or lien on real estate owned by a public utility even though for some purposes such real estate is deemed to be personal property.

Numerous courts have reviewed these Code sections and have concluded that there is a conflict between the 9–102 inclusion, and the 9–104(j) exclusion.

One line of cases has held that only Article 9 is applicable to the assignment of the note and mortgage. *Greiner v. Wilke,* 625 F.2d 281 (9th Cir.1980); *In Re Bruce Farley Corp.,* 612 F.2d 1197 (9th Cir.1980); *In Re Staff Mortgage and Investment Corp.,* 550 F.2d 1228 (9th Cir.1977); *Landmark Land Co. v. Sprague,* 529 F.Supp. 971 (S.D.N.Y. 1981). The other line has held that real estate law is applicable to the assignment of the mortgage, and Article 9 is applicable to assignment of the note. *In Re Kennedy Mortgage Co.,* 17 B.R. 957 (Bkrtcy.D.N.J. 1982). *See also In Re Bristol Associates, Inc.,* 505 F.2d 1056 (3d Cir.1974); *Rucker v. State Exchange Bank,* 355 So.2d 171, 23 U.C.C.Rep. 1020, (Fla.Dist.Ct.App.1978).

That legal question has not been addressed by the parties, and need not be resolved at this point. It is sufficient to note that under all of the cases the only way to perfect an assignment of a note is by the secured party taking possession. Wis.Stat. § 409.304(1) provides:

> A security interest in chattel paper or negotiable documents may be perfected by filing. A security interest in money or instruments (other than instruments which constitute part of chattel paper) can be perfected only by the secured party's taking possession, except as provided in subs. (4) and (5) and s. 409.306(2) and (3) on proceeds.

█ If the Bank did in fact take possession of the Evans note it would at that time have a perfected security interest in the note, and according to the terms of the assignment be entitled to receive payments made on that note by Evans in the event of Isbells' default. The Bank may or may not have perfected the security interests in other collateral which Isbells had received and perfected to secure payment from Evans. But the absence of that security from the Bank's portfolio would not defeat the Bank's claim to be a secured creditor of Isbell, secured by the Evans note. It is only the proceeds of that note, currently held in escrow, which the Bank seeks in this action. The Bank is not proceeding against the Waukesha County property pursuant to the assignment of mortgage. Even if the recording of the mortgage assignment in Waukesha County were a transfer which could be avoided, it is irrelevant to determining the competing rights of the Bank and the trustee in the proceeds of the Evans note. The court need only consider the perfection of the security interest in the note.

In the absence of any evidence concerning possession of the note, the court cannot make any determination of the Bank's secured status or of the trustee's claim of preference.

Upon the request of either the trustee or the Bank made in writing within 30 days of the date of this decision an additional hearing will be scheduled to receive evidence solely on the issue of possession of the subject note. In all other respects judgment may be entered consistent with this memorandum decision.