JOHN W. McGINNIS, Respondent, v. FRANKLIN C. HARDGROVE, Appellant.

Springfield Court of Appeals, April 1, 1912.

1. DAMAGES: Breach of Agreement Not to Engage in Business: Sufficiency of Evidence to Show Damages. In an action for a breach of contract in which plaintiff claims to have been damaged by the defendant setting up a competitive livery business, after he had sold the plaintiff his old livery business under an agreement not to again engage in said business in the same town, as long as plaintiff remained in said business, the evidence is examined and *held* too indefinite and insufficient to enable the jury to ascertain with any reasonable certainty the actual damages naturally and approximately resulting to the plaintiff from the defendant's breach of the contract.

2. ———: ———: ———: Injunction. The chief difficulty found in actions for breach of a contract, where a party agrees not to engage in a certain business, is in ascertaining the damages which the plaintiff can recover, for generally such damages are uncertain, remote and speculative. For this reason a most efficient remedy is an injunction inhibiting the defendant from again entering into the business.

3. ———: ———: ———: Nominal Damages. Where the plaintiff elects to sue the defendant for damages on the grounds that defendant had breached a contract whereby he had agreed not to again engage in a certain business, the plaintiff must be prepared to prove the damages which the law recognizes, or he can only recover nominal damages.

McGinnis v. Hardgrove.

4. ————: **Anticipated Profits Generally Not Recoverable.** As a general rule the recovery of anticipated profits in a commercial business is not allowable because they are too remote and speculative and too dependent upon changing circumstances to warrant a judgment for their recovery.

5. ————: ————: **Exception in Case of Established Business.** A well recognized exception to the general rule denying profits as damages, is that the loss of profits from the interruption of an established business may be recovered; but it is held in such cases that proof of the expenses and income of the business for a reasonable time anterior to and during the interruption of the business, or facts of equivalent import, is indispensable.

6. ————: **Breach of Agreement Not to Engage in Business: Future Losses: Instructions.** In an action for damages for the breach of a contract, by the terms of which the defendant agreed, upon the sale of a livery barn to plaintiff, that he would not again engage in the livery business in the same town, held, that it was error to instruct the jury that in estimating the damages they should consider the loss of profits, if any, which the plaintiff may hereafter sustain, for the reason that the evidence not only failed to show that defendant would continue permanently in the livery business, as a competitor of plaintiff, but as a matter of fact, he might discontinue his livery business at any time.

7. ————: **Future Losses.** Ordinarily damages will not be awarded to compensate for losses not yet experienced on the mere conjectural possibility that such loss will occur.

8. ————: ————: **Removal of Cause of Damage: Recovery in Subsequent Actions.** When the cause of injury is not necessarily permanent but may be removed or rendered inoperative at any time, the measure of damages is the actual damage up to the time of the institution of the suit and not the prospective or contingent damages in the future. In such cases damages arising after the commencement of a suit can only be recovered in subsequent actions.

Appeal from Oregon Circuit Court.—*Hon. W. N. Evans*, Judge.

REVERSED AND REMANDED.

*Geo. M. Miley* and *L. P. Norman* for appellant.

(1) The general rule as to the recovery of anticipated profits in a commercial business is that they are

too remote, speculative and too dependent upon chang-
ing circumstances to warrant a judgment for their re-
covery. They may be recovered only when they are
made reasonably certain by proof of actual fact which
present data for a rational estimate of their amount.
A well-recognized exception to the general rule is that
the loss of profits from the interruption of an estab-
lished business may be recovered; but it is held in
these cases that proof of the expenses and of the in-
come of the business for a reasonable time anterior to
and during the interruption of the business or facts of
equivalent import is indispensable. Morrow v. Rail-
road, 140 Mo. App. 200; Gildersleeve v. Overstolz, 90
Mo. App. 518. (2) In instruction number 3 on behalf
of plaintiff, the jury was instructed that in arriving
at the amount of damages they should consider the loss
of profits plaintiff had sustained, or may hereafter sus-
tain, when there was no evidence whatever to show
what future losses or profits would be, or that there
would be any. This was error. Nixon v. Railroad, 141
Mo. 440; Duke v. Railroad, 99 Mo. 351.

*S. M. Meeks* and *E. P. Dorris* for respondent.

(1) Loss of profits may be recovered for breach
of contracts; damages for breach of contract is differ-
ent from remote or speculative damages. The damage
which one party is entitled to recover for breach of a
contract is such as arise in the natural course of things
from the breach itself or such as may be reasonably
supposed to have been contemplated by the parties
making the contract as the result of the breach. Pruitt
v. Railroad, 62 Mo. 543; Hyatt v. Railroad, 19 Mo.
App. 301; Mitchell v. Branham, 119 Mo. App. 643. (2)
Future consequences which are reasonably to be ex-
pected to follow an injury based upon past or present
conditions, from which a damage has followed through
violation of a contract, may be given in evidence for
the purpose of enhancing the damages to be awarded.

Expected profits can be recovered when made reasonably certain by proof of facts with present data for a rational basis for estimating the amount. 13 Cyc. 31, 36, 49; Wolfshirt Co. v. Frankenthal, 96 Mo. App. 307; Stewart v. Patton, 65 Mo. App. 21; Ramsey v. Holmes Elective Protective Co., 85 Wis. 174, 55 N. W. 391; Hadley v. Baxendale, 9 Exch. 341; Connelly v. Clark, 38 Mo. App. 483; Allison v. Chandler, 11 Mich. 542; Chapman v. Kirby, 49 Ill. 211; Pelz v. Eichele, 62 Mo. 171; Gildersleeve v. Overstolz, 90 Mo. App. 518.

NIXON, P. J.—This is an action for breach of contract in which it is claimed that the plaintiff was damaged by the defendant setting up a competitive livery business in the town of Alton, Mo. Plaintiff obtained judgment for $500 and defendant has appealed.

The evidence tended to show that plaintiff bought the livery business of the defendant and his partner and had an understanding with them that they would not again engage in said business in the town of Alton as long as plaintiff remained in said business in that town, but that shortly afterwards defendant again started in the livery business in said town and run the same in competition with plaintiff's business from about April 1, 1910, continuously up to the time of the filing of this suit on January 12, 1911. Plaintiff took charge of the business which he bought from defendant about March 16, 1910, and remained in said business thereafter continuously to the date of bringing this action. Plaintiff testified that along about the time defendant started in the livery business again as plaintiff's competitor, his business was running fairly well and at its best paid from eight to ten dollars a day; that before defendant started up again, plaintiff made some money, but that for quite a while since that time the business had not cleared expenses. Plaintiff's evidence tends to show that the town of Alton is small and will not profitably support two livery barns. He paid

the defendant $910 as the purchase price for the equipment and business complete, and he testified that he would not have purchased it but for defendant's agreement not to again engage in the livery business in that town.

Plaintiff testified as follows concerning his damages: "Q. State how the business run after you took hold of it? A. The business for a while was rather dull, I did not know how it ought to run, but later on it picked up considerable. After I got opened up right I was doing a fairly good business. Q. State if you can the difference in your business after Hardgrove opened up again and clear on down to the time of this suit? A. I think he got something like one-half of the driving. Q. State if you can the damage to you since Hardgrove went back into the livery business? A. I don't hardly know; I saw the boys driving with him; several of my customers that had been driving with me. Q. From the business you have been conducting what do you think Hardgrove has made? A. My business for quite a while had been running from eight to ten dollars per day and I think Mr. Hardgrove has gotten fully one-half of the business. Before he went in I made some money but for quite a while my barn has not more than cleared expenses. Q. How does your business run by the day or month? A. It has run very light for a good long while. Q. Well, about how has it run? A. I know for quite a while it has only made expenses—maybe four or five dollars per day—maybe four dollars a day on the average." Cross-examination: "Q. When did you take possession of that barn? A. On the sixteenth day of March, 1910. Q. You say the business was dull for a while after you got it? A. Yes, sir. Q. How long did it stay dull? A. Probably a month it was not good. Q. About how long was it before it opened up? A. Booker said it was getting better than he ever saw it along after spring opened up. Q. Well, two months

afterward? A. Maybe a little longer than that. Q. And you say Hardgrove stayed out of business two months? A. I don't think it was that long. Q. Then according to that your business has been better since Hardgrove opened than it was before? A. I don't know what the business was when I went in, but I saw after he opened that the boys were driving with him and that my business was not what it ought to be."

Plaintiff also stated in the course of his testimony that he did not know how much his business ought to run if he had had no competition and that he could not state what damages he had sustained since the defendant went back into the livery business. When asked to state the amount he had been damaged by the rival livery business, he said he hardly knew; that his business at first had been running from eight to ten dollars per day but that defendant afterwards got one-half of his business; that before defendant again started in business plaintiff had made some money, but afterwards for quite a while his business had no more than cleared expenses, and that at that time it was running only four or five dollars a day. This was the data from which the jury were required to estimate the plaintiff's loss of profits.

The basis of respondent's calculation of the amount of profits lost is that his business run eight or ten dollars a day without appellant's competition, but with said competition it run only four or five dollars a day and then merely paid expenses. Taking the high tide of his business at eight or ten dollars a day and the low tide of his business—after appellant's competition commenced—at five dollars a day, we have, according to respondent's calculation, three to five dollars a day *actual profits,* which, for nine months, makes a total *profit* of $675, which respondent claims is $175 greater than the amount allowed him by the verdict of the jury. The unanswerable reply to this calculation is that respondent only testified that at the so-called

high tide of his business his gross receipts were eight or ten dollars a day, and that at low tide his gross receipts were four or five dollars a day, but he did not testify what his *profits* were during this time. As there is no evidence furnished as to the expenses of running the livery business during this period—the cost of feed, extra help, wear and tear of harness and repair of vehicles, or expenses of any other kind—the respondent's business, according to his calculation run eight or ten dollars a day at the first and four or five dollars a day at the last, and the assumption is then made that this difference in gross receipts is the difference in profits—not taking into consideration the expenses, and there being no showing as to whether the expenses during this time continued to be the same or what they were at any time.

The chief difficulty found in actions for breaches of contracts of this character is in ascertaining the damages which the plaintiff can recover as they are generally uncertain, remote and speculative. For this reason, a most efficient remedy is an injunction inhibiting the defendant from again entering into the business he had contracted not to resume.. The jurisdiction of courts of equity to grant this relief is well established. [Wills v. Forester, 140 Mo. App. 321, 124 S. W. 1090.] The right of the plaintiff to maintain an action at law upon a contract not to compete in business is equally well established; and the plaintiff has his election as to which remedy he will pursue; but, when he elects to sue for damages, he must be prepared to prove the damages which the law recognizes or he can only recover nominal damages. The true measure of damages for breach of a contract of this sort is the amount of injury the plaintiff has sustained. If he has sustained no damages which are the natural and proximate results of the breach, he has sustained no real injury and can only recover nominal damages. The right of the plaintiff is to recover com-

pensation for the actual injury he has sustained by the violation of the promise not to engage in the same business. The damages sought to be recovered in this case by reason of the breach of the defendant's contract are measured in the instructions by plaintiff's loss of profits. The general rule as to the measure of damages is that the recovery of anticipated profits in a commercial business is not allowable because they are too remote and speculative and too dependent upon changing circumstances to warrant a judgment for their recovery. They may be recovered, however, in certain cases, as where they are made reasonably certain by proof of actual facts which present data for a rational estimate of their amount. A well-recognized exception to the general rule denying profits as damages is that the loss of profits from the interruption of an established business may be recovered, but it is held in such cases that proof of the expenses and income of the business for a reasonable time anterior to and during the interruption of the business or facts of equivalent import is indispensable. [Morrow v. Railroad, 140 Mo. App. 200, 123 S. W. 1034; Viernow v. Carthage, 139 Mo. App. 276, 123 S. W. 67.]

As we have said, the plaintiff himself testified that he did not know what the profits of the livery business run by defendant were before he (plaintiff) purchased said business and did not know how much he was damaged by defendant engaging in a competitive business, and he furnished no data to enable the jury to ascertain with any reasonable certainty the actual damages naturally and proximately resulting to him from the defendant's breach of the contract. Plaintiff must not only show in such a case his right of recovery but the elements and facts which compose the measure of his recovery and not leave the jury to rove without guide or compass through the limitless fields of conjecture and speculation.

We conclude on a survey of the evidence in the case that there was no evidence upon which the amount of profits could have reasonably been inferred by the jury with any tolerable certainty and that there was no sufficient basis or data in the evidence upon which to sustain the judgment rendered.

The court gave the following instructions for the plaintiff:

"The court further instructs the jury that if you find and believe from the evidence that defendant is now conducting and will continue to conduct and engage in the said livery and feed stable business in said town of Alton, Missouri, in violation of an agreement with plaintiff at the time he bought him out in such business not to engage therein as long as plaintiff engaged in such business in said town of Alton, Missouri, then such fact should be taken into consideration in determining and assessing the damage, if any, which plaintiff will sustain by reason of defendant engaging in and conducting said business in violation of his agreement with plaintiff if you find said agreement was so made, and such fact if proven from all the facts and circumstances in evidence would increase and augment the amount of damage to which plaintiff would be entitled to recover, if any, in this case against defendant."

"The court instructs the jury that in arriving at the amount of damages, if any, which you find the plaintiff is entitled to recover, you should consider the loss of profits, if any, which he has sustained or may hereafter sustain, under all the facts and circumstances in evidence, by reason of defendant again engaging in the livery and feed stable business in said town of Alton, Missouri, in violation of his agreement to not do so, if you find said agreement was so made; and if the jury so find for the plaintiff then you should assess his damages at such sum as in your judgment he may be entitled to recover under all the facts proven

and the instructions given, not exceeding, however, the sum of $2000.''

It will be seen that these instructions inform the jury that in estimating damages they should consider the loss of profits if any which the plaintiff has sustained *or may hereafter sustain*. There is no evidence in this case to show that the defendant would continue permanently in the livery business as a competitor of the plaintiff, but the evidence of the defendant was to the effect that he had already disposed of his interest in the livery business. However that might be, the defendant was at liberty at any time to dispose of or discontinue his livery business. Ordinarily, damages will not be awarded to compensate for losses not yet experienced on mere conjectural possibility that such loss will occur. [Schmitz v. Railway Co., 119 Mo. 1. c. 278, 24 S. W. 472.] When the cause of injury is not necessarily permanent but may be removed or rendered inoperative at any time, the measure of damages is the actual damages up to the time of the institution of the suit and not the prospective or contingent damages in the future. In such cases, damages arising after the commencement of the suit can only be recovered in successive actions brought for that purpose. [Pinney v. Berry, 61 Mo. 359; Brown v. Railroad, 80 Mo. 457; The Ashenbroedel Club v. Finlay, 53 Mo. App. 256.]

It follows that by reason of the prejudicial errors committed the judgment should be reversed and the cause remanded, and it is so ordered. All concur.