**281 P.2d 966**

**McNUTT OIL & REFINING COMPANY, a Texas Corporation, Appellant,**

**v.**

**Frank D'ASCOLI, Rose C. D'Ascoli, Ralph A. D'Ascoli, and Jean M. D'Ascoli, Appellees.**

No. 5829.

Supreme Court of Arizona.
April 5, 1955.

Rehearing Denied May 3, 1955.

Merchant & Parkman, Lee H. Brown, Tucson, for appellant.

Robert D. Stauffer, Harry L. Buchanan, Tucson, for appellees.

PHELPS, Justice.

This cause of action arose out of a contract of sale and purchase entered into between Bruno Gajewski and his wife and Frank D'Ascoli and Ralph D'Ascoli and their wives on or about the 25th day of August, 1949. The subject of the transaction was a service station located in Tucson, Arizona. At the time of the sale the Gajewskis were handling "Dixie" gas sold and distributed by the defendant McNutt Oil Company. In said agreement the

D'Ascolis agreed to pay to the Gajewskis the sum of $18,000 at the time and in the manner in said contract provided, and the Gajewskis agreed to sell and convey said property both real and personal to the D'Ascolis for said sum of $18,000 and covenanted and agreed in addition thereto that the said Gajewskis would not enter into competition with the D'Ascolis within a radius of three miles of said service station. The purchasers fully performed their part of the agreement making the payments at the time and in the manner provided therein. In the spring or summer of 1950 the D'Ascolis were not satisfied with their relations with the defendant and began to negotiate with the General Petroleum Company to handle their products in that station. The parties herein will be hereinafter referred to as plaintiffs and defendant.

The negotiations finally resulted in the plaintiffs leasing the station to General Petroleum for $150 per month rental who in turn leased it back to them at a figure not shown by the evidence. When plaintiffs purchased the service station they assumed a certain mortgage indebtedness secured by the equipment purchased in which defendant was in some way interested as a guarantor and for which plaintiffs were paying 6% interest. Under the arrangements with General Petroleum plaintiffs were to be refinanced at 4½% interest and were to begin handling General Petroleum products on July 1, 1950. Plaintiffs paid the mortgage indebtedness to the Bank of Douglas on May 23, 1950, but because of defendant's failure to have the lien against the Gajewskis' equipment released until September 28, 1950, plaintiffs were unable to close their negotiations with General Petroleum and procure its products until October, 1950. As a result thereof the plaintiffs were required to refund to General Petroleum rental of $150 per month for the months of July, August and September, 1950. The General Petroleum Company handled "Mobile" gas which sells on the market for a few cents per gallon more than "Dixie" gas furnished by the McNutt Oil Company.

In September of 1950 the Gajewskis opened up a service station handling Dixie gas approximately two blocks from the station which plaintiffs had purchased from them in July, 1949.

The plaintiffs instituted action against the Gajewskis for breach of covenant on the contract of sale and recovered a judgment against them in the sum of $500 which, under the instructions of the court upon the law of the case, was limited to loss of profits up to January 3, 1951, the date of the filing of their complaint against the Gajewskis. That judgment was paid in full and satisfied of record and the plaintiffs brought this action against the defendant and allege that the defendant wilfully, knowingly and wrongfully caused the Gajewskis to breach their agreement with the plaintiffs by inducing the Gajewskis to lease and operate a competitive gasoline service station within three miles of plain-

tiffs' service station, to wit, within two blocks thereof.

The Oil Company answered setting up four separate defenses to the complaint:

1. That prior to the commencement of said cause of action plaintiffs had recovered judgment against the Gajewskis for the breach of the covenant here in question and which judgment had been fully satisfied by the Gajewskis;

2. That said judgment against the Gajewskis was a final adjudication of all the rights and claims of the plaintiffs growing out of the alleged breach of covenant and that the payment thereof constituted full satisfaction of all of plaintiffs' claims arising therefrom;

3. That by reason of the recovery and satisfaction of said judgment plaintiffs were estopped from asserting any claims against this defendant by reason of their election of the remedy against the Gajewskis;

4. That defendant was released from any claim against it by plaintiffs' acceptance of the damages recovered against and paid by the Gajewskis.

Plaintiffs sought damages in the sum of $6,000 as and for actual damages based upon the loss of the good will of the business purchased from the Gajewskis and $6,000 as and for punitive damages because of defendant's alleged wilful and wrongful inducement of the breach by the Gajewskis of the restrictive covenant in their contract with plaintiffs. The cause was tried to a jury and a verdict was returned in the sum of $1,000 actual damages and $4,000 punitive damages. Upon motion for a new trial the trial court ordered a remittitur of $1,500 on the judgment of punitive damages, otherwise a new trial would be granted to the defendant. Plaintiffs proffered a remittitur of $1,500 in conformity with the order of the trial court. Nevertheless the defendant appealed to this court from the judgment of the lower court and from the order denying the motion for a new trial.

Defendant has presented four assignments of error for our consideration:

1. The court erred in not granting defendant's motion to dismiss the complaint for failure to state a cause of action.

2. The court erred in not granting defendant's motion to dismiss at the close of plaintiffs' case for failure to prove a prima facie case.

3. The court erred in not granting defendant's motion to dismiss at the close of the case and prior to submission of the case to the jury for failure to prove facts sufficient to entitle plaintiffs to relief.

4. The court erred in not granting defendant's motion to set aside the verdict and judgment entered thereon

and seeking judgment for the defendant notwithstanding the verdict and for the granting of a new trial for the reasons stated.

Defendant's first assignment of error is predicated upon the proposition that plaintiffs in their action against the Gajewskis for breach of covenant in their contract with plaintiffs had recovered all of their damages resulting therefrom and therefore cannot superimpose this cause of action upon the one against the Gajewskis. They claim that to do so would result in unduly and unjustly enriching the plaintiffs.

The position of defendant is not sound. The cause of action against the Gajewskis was an action ex-contractu. The cause of action against the defendant is one ex-delicto. One is based upon a breach of covenant in the contract, the other upon the commission of a tort by defendant by inducing the Gajewskis to breach their contract with plaintiffs. The quotation from the restatement of torts, section 897, and the comment thereon at page 517, have no application whatever to the instant case.

Defendant further raised the question that exemplary or punitive damages are not recoverable in the absence of an award of actual damages. Actual damages were awarded in the instant case and unless plaintiffs exhausted their remedy for the recovery of actual damages in their action against the Gajewskis the question becomes academic and immaterial to a determination of the issues here.

Defendant contends that under the rule laid down in Jacob v. Miner, 67 Ariz. 109, 191 P.2d 734, loss of future profits are recoverable in an action of this kind and that plaintiffs exhausted their remedy for breach of the restrictive covenant in their contract with plaintiffs when they recovered and had satisfied their judgment of $500 against the Gajewskis. The court did state in that case that loss of future profits was recoverable in an action like this. However the statement was purely dictum as there was no loss of profits in that case at any time. In fact all of the units in the court involved in Jacob v. Miner, supra, brought in a maximum income at all times after the sale of the property to Miner. The actual damages recovered in that case were based upon injury to the good will of the business of which profits are only one of the elements. With the limitations hereinabove set forth loss of future profits are recoverable but the fact situation in this case does not bring it within that category.

█ We are of the view that the recovery by the Gajewskis of damages for breach of covenant in their contract with plaintiffs is not a bar to plaintiffs' further recovery either against the Gajewskis on the contract or against defendant tort-feasor. This is true for the reason that each day the Gajewskis continued to sell gas at their new station in competition with plaintiffs constituted a continuing wrong done to plaintiffs. Their rights

were constantly violated and in such a way that the ensuing loss of profits must have been contemplated by the parties. Salinger v. Salinger, 69 N.H. 589, 45 A. 558. Therefore all damages which flowed as a direct and immediate result of the Gajewskis' breach of covenant with plaintiffs subsequent to January 3, 1951, and up to the date this action was instituted are recoverable in this cause of action against defendant.

■ It is only where the breach of contract is complete and final, i. e., that the cause of the injury is necessarily permanent so that no act of the party breaching the contract can change the amount of damages directly and immediately flowing therefrom that the damages recoverable are required to be determined in a single cause of action. Ewanski v. Solvay Process Co., 227 App.Div. 597, 238 N.Y.S. 508. It was held in McGinnis v. Hardgrove, 163 Mo.App. 20, 145 S.W. 512, 514, that:

"* * * When the cause of injury is not necessarily permanent, but may be removed or rendered inoperative at any time, the measure of damages is the actual damages up to the time of the institution of the suit, and not the prospective or contingent damages in the future. In such cases damages arising after the commencement of the suit can only be recovered in successive actions brought for that purpose. * * *"

In the case of Winter v. Haan, Mo.App., 211 S.W.2d 544, 546, decided in 1948 the Missouri court said that:

"* * * Although some courts hold to the contrary, it is now established in this state that loss of future profits caused by interruptions or the breaking up of *an established business*, is not too speculative, remote, or uncertain to be allowed. McGinnis v. Hardgrove, 163 Mo.App. 20, 145 S.W. 512. * * *"

This statement at first blush would appear to be a modification of the rule laid down in McGinnis v. Hardgrove, supra, but it is not so. In Winter v. Haan, supra, the breach complained of was a complete repudiation of a contract of lease and the lessee was evicted from the premises after he had crops planted for the season, and forbidden to again enter upon the premises. The cause of the injury was necessarily permanent. The court correctly held that the lessee was entitled to recover any loss of profits which were capable of being proved with reasonable certainty which he suffered as a result of such breach.

■ In the instant case the cause of the injury to plaintiffs cannot be said to be necessarily final and permanent so that loss of future profits then become fixed so that they could, at that time, be proved as in the case of Winter v. Haan, supra. It is not at all certain that the Gajewskis

will continue to operate their competitive business where they are now operating. They may abandon it tomorrow or next year. They may be forced to abandon it for business reasons. On the other hand they may continue to operate it in competition with plaintiffs until the latter's business is completely destroyed and the good will for which plaintiffs assert they paid $6,000 becomes entirely valueless. Therefore with these contingencies existing any attempt to prove loss of future profits would be futile and all the authorities are in agreement that while mathematical accuracy is not required in proving loss of future profits such loss cannot be predicated upon conjecture or speculation. For cases supporting the views hereinabove expressed see Merager v. Turnbull, 2 Wash.2d 711, 99 P.2d 434, 127 A.L.R. 1142, and Annotations in 127 A.L.R. 1152 to 1178.

As above stated the instant cause of action is one in tort in inducing the Gajewskis to breach their restrictive covenant with plaintiffs. The fact that defendant did induce such breach has been determined by the jury. This finding is clearly supported by the evidence. That defendants' inducement of the Gajewskis to violate such covenant in their contract with plaintiffs for the sale of their service station in question was a violation of a substantial right measurable in actual damages cannot be disputed. The jury awarded plaintiffs both actual and punitive damages. The evidence adequately justifies the award of actual damages. The actual damages in the instant case are to be ascertained by the same standards as if the action were upon the contract instead of in tort. In this action, however, plaintiffs are also entitled to recover punitive damages if the acts of defendant were shown to be wrongful, wilful and malicious in fact.

Does the evidence justify an award of punitive damages? Let us examine the evidence. It is undisputed that defendant knew of the restrictive covenant in the contract between plaintiffs and the Gajewskis and notwithstanding such knowledge defendant solicited the Gajewskis' entry into the gas station business to handle its products in competition with plaintiffs. Defendant also furnished the Gajewskis finances with which to open a competitive station about which defendant complains, within two blocks of plaintiffs' business. Without such financial aid the Gajewskis could not have opened said station. At all times since the Gajewskis entered into competition with plaintiffs in violation of their covenant defendant has furnished the Gajewskis all necessary supplies of gas and oil to continue their violation of said covenant.

The failure of defendant to release or cause to be released the mortgage covering the fixtures purchased by plaintiffs from

the Gajewskis for a period of four months after it was paid in the face of repeated requests by plaintiffs to release the same so that they could complete their negotiations with General Petroleum to handle their products together with other circumstances hereinabove related, to our mind, fully justifies the finding of the jury that the conduct of the defendant was wilful, wrongful and malicious in fact. This is all that was necessary under the circumstances to entitle plaintiffs to punitive damages. We believe the evidence in this case is entirely adequate for the recovery of punitive damages under the rule laid down in Lutfy v. R. D. Roper & Sons Motor Co., 57 Ariz. 495, 115 P.2d 161.

[9] We do not believe that there is any merit to the claim that plaintiffs cannot prevail because they offered no proof that the Gajewskis would have performed their contract with plaintiffs except for defendant's inducement to breach said agreement. The evidence is sufficient, as above pointed out, to justify the finding of the jury that it was the inducement of the defendant that caused the Gajewskis to breach their covenant with plaintiffs.

The judgment of the trial court is affirmed.

LA PRADE, C. J., and UDALL, WINDES, and STRUCKMEYER, Jr., JJ., concurring.