438 P.2d 434

HARRIS CATTLE CO., an Arizona corporation, and Thomas Anesl, Appellants,

v.

MADISON CHEVROLET, INC., a corporation, formerly Paradise Motors, Inc., Appellee.

No. I CA–CIV 580.

Court of Appeals of Arizona.

March 19, 1968.

Rehearing Denied April 1, 1968.

Review Granted April 23, 1968.

Kramer, Roche, Burch, Streich & Cracchiolo, by Daniel Cracchiolo and Robert E. B. Allen, Phoenix, for appellants.

Bellamak, Zepp & Mitchell, by Ferris W. Bellamak, Scottsdale, for appellee.

STEVENS, Judge.

The issue presented in this appeal is the sufficiency of the proof of the claimed business loss of profits which were awarded arising out of a tort. The tort was admitted.

Prior to 15 December 1962, Gray Madison was the principal stockholder in each of two corporations, each corporation being a duly franchised automobile dealer. The plaintiff corporation was located in Scottsdale and the other corporation, Madison Motors, was located in downtown Phoenix. During the time that both corporations were active in their respective dealerships, Paradise Motors had 16 salesmen. The Madison Motors franchise was sold and Mr. Madison then consolidated his sales efforts through the plaintiff corporation. Nine of his most experienced car salesmen transferred their employment from Madison Motors (Phoenix) to Paradise Motors (Scottsdale).

On 15 December 1962 appellant Anesl, in the course and scope of his employment with appellant Harris Cattle Co., negligently drove a pickup truck into the showroom of Paradise Motors causing extensive damage. The cost of the physical damages was ascertained and promptly paid. In the course of the repair, Paradise enlarged the showroom to some extent, this however, plays no material part in the litigation. From the date of the tort to the completion of the repair and remodeling, 56 days were consumed. At times during this period Paradise had 23 car salesmen and at times 22 car salesmen.

By today's standards, the area available to the plaintiff corporation for the display of its cars and the area available for office space incident to sales, was not large. There can be no question but that the tortious damage to the plaintiff's property was the proximate cause of a difficult physical business environment. As before stated, the issue in litigation was a loss of business profits.

During the 56 days in question the plaintiff's gross profits and the plaintiff's net profits both exceeded the profits for the like period 12 months prior. The accountant who testified presented figures to the effect that during the 56 days here in question, the average profit per salesman was $506 less than during a similar period a year earlier. Based upon an average of 22½ salesmen employed, he reasoned that the company lost $11,385 in profits. The trial court entered judgment for the plaintiff in that sum. The defendants offered no evidence urging in the trial court, and here, that the plaintiff's evidence was not sufficient to warrant a finding or judgment in any sum whatsoever.

Mr. Madison testified that the area available for the conduct of the automobile business was cramped, the clear implication of the testimony being that it was cramped without the interference of repair and remodeling. He was questioned on cross-ex-

amination as to the effect of the repair confusion upon sales and we quote from the reporter's transcript:

"Q   Now, you stated that this affected your sales to a degree?

"A   Yes.

"Q   Then how do you explain, Mr. Madison, the fact that, according to the figures you gave us you actually had three of the best months of sales you ever had at that location?

"A   You said a minute ago that you didn't know much about the automobile business.  You actually never know.  The automobile business jumps up and down. How can you possibly say that if it were not for the hardship they might have been better than they were?

"Q   You are saying that it is highly speculative?

"A   That's right.

\*     \*     \*     \*     \*     \*

"there is no way in the world of knowing if they (the figures on sales) wouldn't have been better if the place was not all torn up.  I should have put up a tent if a torn-up building is better than a good one, or demolished it."

The accountant testified, in part, as follows in relation to his computation as to damages:

"The average loss of profit per salesman is $506, and then you multiply that by the number of salesmen to get the total.

"Q   The theory upon which you are proceeding is: If you have 16 salesmen who, in previous years, have had a certain profit per salesman, then your salesmen the succeeding year should, on a per salesman basis sell approximately the same number of cars and have approximately the same profit?

"A   They should.

\*     \*     \*     \*     \*     \*

we did not just hire more salesmen, we transferred salesmen from the downtown area who were already in business in this area.  They had customers and they would be expected to produce the same amount of business they had been doing. Therefore, we would have expected more profit from this number of salesmen. They should have produced the same amount of profit as had been done in the past, yes.

"Q   This is an assumption, is it not?

"A   I think a good one.

"Q   And it is speculative in nature, isn't this correct, because if you did follow this theory—

"A   No, it is not speculative.  It is based on the record.

\*     \*     \*     \*     \*     \*

"Q   And this is pretty much shown by the fact the gross profit increased in 1963 over the gross profit in 1962, is it not?

"A   But it should have increased a whole lot more.

\*     \*     \*     \*     \*     \*

"Q   And you state that this is an accepted method in accounting, determining loss and profit by using the number of salesmen employed?

"A   I didn't say this was an accepted method.  I said the comparison of one year with the prior year is an acceptable method of making a comparison.  I think this is a fair computation.  That is why I used it.

"Q   Whose idea was it to use this particular computation sir?

"A   My own.

"Q   Yours?

"A   Yes, sir."

The record is silent as to a timely request for findings of fact and conclusions of law under Rule 52(a) of the Rules of Civil Procedure, 16 A.R.S.  Nevertheless, the trial court entered findings of fact and conclusions of law.  Since no issue is raised with reference to this procedural matter, we will treat the findings of fact in the same manner as though a timely request

had been made therefor. The rule states, in part:

"* * * Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibilty of witnesses. * * *"

The case law restates the above quoted portion of the rule. The findings of fact support the judgment and we quote Finding Number 11:

"That plaintiff suffered compensable damage for lost profits in the amount of $11,385.00."

The problem facing this Court is to determine whether under the facts and the evidence above set forth the finding as to loss of profits was "clearly erroneous".

■ There are several Arizona cases which give consideration to loss of profits and the proof thereof. The language contained in the several opinions is not uniform. Among the opinions are: White River Sheep Co. v. Barkley, 37 Ariz. 49, 288 P. 1029 (1930); Jenkins v. Skelton, 21 Ariz. 663, 192 P. 249 (1920); Jacob v. Miner, 67 Ariz. 109, 191 P.2d 734 (1948); McNutt Oil & Refining Company v. D'Ascoli, 79 Ariz. 28, 281 P.2d 966 (1955); Isenberg v. Lemon, 84 Ariz. 340, 327 P.2d 1016 (1958); and Gilmore v. Cohen, 95 Ariz. 34, 386 P.2d 81, 11 A.L.R.3d 714 (1963). The rule appears to be that once the question of liability is established, and here it was admitted, the quantum of proof of loss of profits is somewhat relaxed but that loss of profits may not be established by speculative or conjectural evidence. In our opinion, the evidence in the case before us was too speculative and uncertain to permit the award for loss of profits to stand. In Gilmore, the Arizona Supreme Court affirmed an award of nominal damages for loss of profits. The trial court made the following finding:

"2) the amount of plaintiff's damages could not be ascertained from the evidence with any degree of reasonable certainty; * * *"

■ In the footnote to O'Malley Investment and Realty Company v. Trimble, 5 Ariz.App. 434, 427 P.2d 926 (1967), this Court stated in reference to A.R.S. § 12–2103:

"Although this court is not specifically mentioned in this statute, we believe it was the legislative intent in creating the court of appeals to give it the same general powers in reviewing a judgment."

A.R.S. § 12–2103, subsec. A, is as follows:

"The supreme court may affirm, reverse or modify a judgment or order appealed from, and may render such judgment or order as the court below should have rendered, or may remand the action to the court below with directions to render such judgment or order, or may direct that a new trial or other proceedings be had, as justice may require, accompanying the mandate with a copy of its opinion."

A.R.S. § 12–2104 empowers the Supreme Court to order remittiturs or additurs. In our opinion these sections are not exclusive but are complimentary. This view is evidenced by Zancanaro v. Cross, 85 Ariz. 394, 339 P.2d 746 (1959), wherein the court states on 401 of the Arizona Reports, on 751 of 339 P.2d:

"Where the judgment has been properly rendered, but for an incorrect amount, this court may do justice without remanding the case for a new trial by modifying the amount of the judgment."

This rule was followed in Cagle v. Carr, 101 Ariz. 225, 418 P.2d 381 (1966). We recognize that in both of these cases the Supreme Court was able to reach an arithmetic calculation.

■ In our opinion the plaintiff did not present adequate proof upon which to base an award for loss of profits. In our opinion the plaintiff established an adequate basis for an award of nominal damages as approved in *Gilmore*. After the trial, the Superior Court Judge who presided retired, and he is not available for further service in this cause. Under these circumstances, we deem it appropriate to fix

nominal damages and we find the same to be $10.00 a day.

This cause is affirmed as to liability and is reversed as to the award for loss of profits. The Superior Court is directed to vacate the judgment heretofore rendered and to enter a new judgment in favor of the plaintiff and against the defendants for nominal damages in the sum of $560.00, together with the plaintiff's Superior Court cost. Pursuant to A.R.S. § 12–342, subsec. A, the cost on this appeal will be taxed in favor of the appellants.

CAMERON, C. J., and DONOFRIO, J., concur.