CROWN HOLDING CORP., Appellant,

v.

James R. LARSON, et al., Respondents.

No. C4–86–1925.

Court of Appeals of Minnesota.

Aug. 11, 1987.

James T. Swenson, Mackall, Crounse & Moore, Minneapolis, for appellant.

Richard D. Donohoo, Maun Green Hayes Simon Johanneson & Brehl, St. Paul, for respondents.

Heard, considered, and decided by NIERENGARTEN, P.J., and FOLEY and RANDALL, JJ.

## OPINION

RANDALL, Judge.

Crown Iron Works brought this action for unfair competition against its former employee, James R. Larson, and his corporation, Falcon Industries. Crown Iron Works' claim was later assigned to appellant Crown Holding Corporation. This is the second suit between these parties for breach of Larson's employment contract and unfair competition. After the second trial, the court ruled appellant did not prove any unfair competition occurred since the first trial, and ruled all other claims were barred by the doctrine of res judicata. Appellant made no post trial motions for amended findings, a new trial, or judgment notwithstanding the verdict, and appealed directly from the judgment of dismissal with prejudice. We affirm.

## FACTS

James Larson, respondent, was employed by appellant Crown Iron Works, from 1962 to June 18, 1982, when he resigned as head of Crown's division that produced and sold custom made helecoid screws and augers. In addition to its own sales staff, Crown employs independent sales representatives to market its products, and did so in 1982.

In 1980, while still employed by appellant, respondent Larson signed an employment agreement, which required him to keep the identity of Crown's customers confidential for two years after his resignation. The agreement originally contained a two year non-compete clause. Respondent refused to sign the contract as long as it contained the non-compete clause, and appellant agreed to strike that clause from the contract.

In June 1981, without appellant's knowledge, respondent and Robert Carlson, formed Falcon Industries, Ltd., a Wisconsin corporation with a facility in Hector, Minn. Falcon produces custom made screws and augers. Falcon began soliciting sales of custom screws and augers in March 1982. Respondent resigned from Crown June 18, 1982.

Not until after Larson's resignation did appellant discover respondent was soliciting its customers on behalf of Falcon. This solicitation included a direct mail campaign. On August 10, 1982, the district court granted appellant a temporary restraining order (TRO), which prohibited any solicitation of appellant's custom made heavy duty conveyer and auger screw customers. On October 6, 1982, the district court granted a temporary injunction and recommended an expedited trial, "to be held within 30 days of the date hereof." The temporary injunction enjoined Larson and Falcon from contacting certain specified Crown customers until further order of the court. The trial took place onl December 6 and 7, 1982. However, relying on the court's expedited trial recommendation, Crown ceased discovery in October 1982.

On February 7, 1983, following the first trial, the district court found that, on at least one occasion while he was still employed by appellant, Larson submitted a higher bid on behalf of appellant and a lower bid on behalf of Falcon for the same contract. It found respondent had developed appellant's customer list while in appellant's employ, and that the customer list was confidential. The court concluded respondent breached his employment agreement with appellant as well as a common law duty of loyalty to his employer; that he, Carlson and Falcon engaged in unfair competition with appellant; and that Crown was damaged in the amount of $14,835.88, by Falcon's use of information on Crown's customers following Larson's resignation. After this trial and the court's ruling in favor of Crown Holding awarding it damages for unfair competition, and following a motion hearing, the pretrial temporary injunction was dissolved.

After the injunction was dissolved, appellant believed respondent was still continuing to sell to the customers specified in the temporary injunction, those customers for which respondent paid damages as a result of the first trial. Appellant sued respondent for a portion of the profits from these sales, but did not attempt to get a temporary restraining order against further solicitations. Appellant contended damages awarded as a result of the first trial did not represent the total amount of sales in violation of the injunction, in part because appellant ceased discovery at the end of October 1982, in reliance on the court's expedited trial recommendation. Appellant also alleged that after the injunction was lifted respondent continued to "illegally" sell to Crown customers. Appellant seeks an additional $111,003.84 in damages for the alleged sales made through June 1984 by Falcon to other Crown customers.

Appellant admits respondent initiated no contact with Crown customers while the injunction was in force, between August 1982 and February 1983. Evidently customers sought Falcon out and purchased additional parts from Falcon during this period. As a result of the second trial, the district court found appellant's customer list was not a trade secret, and that appellant failed to prove respondents engaged in any unfair competition after the first suit. The district court ruled appellant's claim for breach of employment contract was barred by res judicata. We affirm.

**ISSUE**

Was the trial court's finding, that post-December 1982 sales were not a result of unfair competition, supported by the evidence?

**ANALYSIS**

*Standard of Review*

■ Appellant did not move for amended findings, JNOV, or a new trial. The court of appeals will not review issues raised on appeal where the trial court was not given an opportunity to correct its own errors. *Sauter v. Wasemiller*, 389 N.W.2d 200 (Minn.1986); *Cogswell v. Eichenberger*,

371 N.W.2d 561 (Minn.Ct.App.1985). When no motion for a new trial is made, our scope of review is limited to whether evidence sustains findings of fact and whether findings of fact sustain the conclusions of law and judgment. *Gruenhagen v. Larson*, 310 Minn. 454, 458, 246 N.W.2d 565, 569 (1976).

*Trade Secret*

Appellant claims the trial court erred by finding evidence was insufficient to conclude Crown's customer list is a trade secret. A trial court's findings of fact will not be overturned unless clearly erroneous. *City of Minnetonka v. Carlson*, 298 N.W.2d 763, 766 (Minn.1980); *Auto-Owners Insurance Co. v. Harris*, 374 N.W.2d 795, 797 (Minn.Ct.App.1985).

In order to overturn a trial court's findings, this court must be left with a definite and firm conviction that a mistake has been made, notwithstanding the evidence to support such findings.

*Cherne Industrial, Inc. v. Grounds & Associates*, 278 N.W.2d 81, 88 (Minn.1979).

■ A trade secret is something not generally known or readily ascertainable, or kept confidential. *Id.* at 90. To find Crown's customer list was not a trade secret, the trial court relied on evidence that Crown marketed its custom made screws through independent representatives; that these representatives had no confidentiality agreement with Crown after December 1982; and that independent representatives develop their own customer lists. The court rejected appellant's contention that respondents used to their advantage confidential information contained in appellant's accounts receivable list. These findings are supported by the evidence. Moreover, under the doctrine of res judicata appellant cannot now relitigate, under a new legal theory, respondent's past liability for use of appellant's customer list. The issue was litigated and liability found in the December 1982 trial. *See Howe v. Nelson*, 271 Minn. 296, 301, 135 N.W.2d 687, 691 (1965) (res judicata precludes subsequent suits not only as to every matter litigated, but

also as to every claim or defense which might have been litigated.) Appellant is barred from relitigating other possible theories of tort liability for respondent's use of Crown's list.

### Unfair Competition

The trial court found:

Both the issues of breach of the employment agreement and unfair competition were litigated in the first action, and [respondent] received both damages and injunctive relief. The only claim [appellant] did not fully litigate in the prior action is that of unfair competition after the first trial. [Appellant] failed to show that [respondents] had engaged in unfair competition beyond what was determined at the first trial. * * * There was no showing of any improper solicitation of [appellant's] customers by the [respondents] after the first trial or the reasons for any of these customers choosing Falcon over Crown.

\*　　\*　　\*　　\*　　\*　　\*

[Appellant] has failed to delineate which customers were solicited by representatives and which, if any, were known only by Crown, and thus taken by [respondents'] unfair competition.

Appellant concedes respondents did not solicit Crown customers during the injunction period. However, appellant argues that it is entitled to damages for sales made to Crown customers who were solicited before the TRO was entered and who placed orders after appellant "cut off discovery" in October 1982, as well as those who placed orders after the conclusion of the December 1982 trial. Respondent argues that appellant's claims for damages were fully litigated in the December 1982 trial; that, as a result of that trial, appellants received injunctive relief and damages; and that appellant's present claims for damages are barred by the doctrine of res judicata. *See Howe,* 271 Minn. 296, 135 N.W.2d 687.

The trial court found:

There was insufficient evidence to show that the sales of [respondent] Falcon since December 1982 were a result of unfair competition.

In its memorandum, the court noted:

[Appellant] failed to show that [respondents] had engaged in unfair competition beyond what was determined at the first trial.

[Appellant's] principal contention for proving unfair competition was that the accounts receivables list contained confidential information which defendants used to their advantage. However, there was not enough evidence to support this contention. This list of customers contained names which the representatives also had contacted and used to solicit business. There was no showing of any improper solicitation of [appellant's] customers by the [respondents] after the first trial or the reasons for any of these customers choosing Falcon over Crown.

While [the trial judge in the first trial] rejected [respondents'] position regarding the role of the representatives in the prior litigation, in the present matter the representatives have an important role in the claim for ongoing unfair competition. These representatives have no confidentiality agreement with the companies and they have their own lists of potential customers. [Appellant] has failed to delineate which customers were solicited by representatives and which, if any, were known only by Crown, and thus taken by [respondent's] unfair competition.

This conclusion is supported by the evidence. No evidence was presented to show why particular customers selected Falcon or Crown. There is no basis for a conclusion that any sale made to a Crown customer is a result of unfair competition. Whatever damages appellant allegedly incurred prior to the December 1982 trial should have been litigated in that trial and are res judicata under *Howe.*

Moreover, in response to appellant's contention that it is entitled to damages for sales occurring after what appellant terms its "discovery cutoff," the court correctly found, "[Appellant] was awarded damages and injunctive relief pursuant to the evidence that [appellant] elected to present."

Appellant contends that respondent's confidentiality agreement did not terminate with the lifting of the TRO, but extended until two years after Larson left Crown, or until June 18, 1984, and that the alleged continued use of Crown's list constitutes a "continuing wrong," based on *McNutt Oil and Refining Co. v. D'Ascoli,* 79 Ariz. 28, 281 P.2d 966 (1955). We do not agree. Once the injunction was lifted, respondents were free to compete with Crown for Crown customers. Respondents were not liable for sales made to Crown customers after the injunction was lifted.

Appellant raises two additional issues: (1) Did the trial court err by finding appellant lost trade secret protection because it did not require its independent representatives to sign sales agreements? and (2) Did the court err by relieving respondent of the remainder of his confidentiality agreement after the first trial? These are not sufficiency of the evidence questions, they are legal questions. Because appellant failed to file a motion for a new trial, these issues are not reviewable on appeal. *See Cogswell,* 371 N.W.2d at 562–63.

### DECISION

The trial court's judgment is affirmed in all respects.

Affirmed.