NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

SCOTT WEIGELE, et al.,
Plaintiffs/Appellees,

v.

JAMES OLIVER, et al.,
Defendants/Appellants.

No. 1 CA-CV 20-0171
FILED 2-16-2021

Appeal from the Superior Court in Maricopa County
No. CV2017-096061
The Honorable Janice K. Crawford, Judge

**AFFIRMED**

COUNSEL

Berkshire Law Office, PLLC, Tempe
By Keith Berkshire, Erica L. Leavitt
*Counsel for Plaintiffs/Appellees*

Davis Miles McGuire Gardner, PLLC, Tempe
By Bradley D. Weech, Marshall R. Hunt
*Counsel for Defendants/Appellants*

## MEMORANDUM DECISION

Judge James B. Morse Jr. delivered the decision of the Court, in which Presiding Judge D. Steven Williams and Judge Jennifer B. Campbell joined.

**M O R S E**, Judge:

¶1        James Oliver, H&O Investment, LLC, and ATM 1 AZ, LLC (collectively, "Appellants") appeal the superior court's directed verdict on a claim of lost-profit damages, as well as the court's denial of attorneys' fees. Because Appellants have shown no error, we affirm.

### FACTS AND PROCEDURAL BACKGROUND

¶2        In January 2016, Scott and Cathy Weigele ("the Weigeles") created ATM 1 AZ, LLC,[1] ("ATM 1 AZ") a business which supplied automated teller machines ("ATMs") to businesses located in and around the Phoenix area. ATM 1 AZ charged a processing fee whenever customers withdrew cash from any of their ATMs. In May 2016, James Oliver, through his solely owned and operated company, H&O Investment, LLC ("H&O"), purchased a fifty-percent partnership in the "business activities" of ATM 1 AZ. The partnership agreement resulted in H&O and ATM 1 AZ each owning a fifty-percent interest in the ATMs and a fifty-percent interest in the "profit, losses and expenses of all the agreed upon business activities."[2] At the time of agreement, ATM 1 AZ operated three ATMs at different locations, including the company's most profitable ATM at a medical marijuana dispensary called Emerald Palace.

¶3        In August 2016, Oliver and the Weigeles entered a written agreement wherein H&O agreed to purchase the remaining fifty-percent interest in the ATMs for $15,000. Appellants took full control of the ATMs on August 31, 2016. Shortly thereafter, Oliver met with the owner of

---

[1]      The business was originally known as ATM Easy Cash, LLC before being renamed to ATM 1 AZ, LLC. For the sake of clarity, we will simply refer to the business as "ATM 1 AZ."

[2]      The contract agreement stipulated that H&O "is not purchasing any part or shares of [ATM 1 AZ] but is agreeing to conduct business as an equally invested team/partner."

Emerald Palace to pitch the idea of installing a second ATM. The owner rejected the proposal, said that Emerald Palace would soon begin handling ATM transactions in-house, and informed Oliver that Emerald Palace would not be renewing its ATM lease after October 2016. The parties dispute whether the Weigeles knew at the time of the sale that Emerald Palace would not renew its lease. Appellants refused to honor the contract for the purchase of the remaining fifty percent of the business.

¶4          In September 2017, the Weigeles filed a claim against Appellants seeking $15,000 in damages for breach of contract, breach of the implied covenant of good faith and fair dealing, and unjust enrichment. Appellants counterclaimed in August 2018 seeking $150,000 in damages— $90,000 of which was for "lost income/profits"—for negligent misrepresentation, fraud, breach of contract, and breach of the covenant of good faith and fair dealing.

¶5          In October 2018, the superior court placed the case on its dismissal calendar and ultimately dismissed the case pursuant to Arizona Rule of Civil Procedure 38.1(d)(2). Appellants moved the superior court for an extension, and the case was revived.

¶6          The case was tried before a jury. In support of Appellants' $90,000 lost-profit damages claim, Oliver introduced spreadsheets displaying the total number of withdrawals made from ATM 1 AZ's three machines during April 2016. Interpreting data from the spreadsheets, Oliver testified that ATM 1 AZ made $3,829.50 from the ATM at Emerald Palace and $410 combined from the ATMs at the other two locations. Furthermore, Oliver testified that "in 18 months, the two dispensaries[3] that [he] lost would have made $5,000 a month on a growing basis. . . . $5,000 times 18 months is $90,000."

¶7          Following the presentation of evidence, the Weigeles moved for a directed verdict on Appellants' claim for lost-profit damages. The superior court granted the motion, finding that Oliver's testimony was "not sufficient to provide reasonable certainty from what a jury could decide." Additionally, the superior court granted a directed verdict on the Weigeles' claim of breach of the covenant of good faith and fair dealing.

---

[3]     The second dispensary Oliver references appears to refer to his rejected plan to install a second ATM machine in Emerald Palace.

¶8            The jury returned a verdict against the Weigeles on all their claims and in favor of Appellants on the counterclaims of negligent misrepresentation, fraud, breach of contract, and breach of the covenant of good faith and fair dealing.  The jury awarded Appellants $17,870 in damages.

¶9            Appellants subsequently asked the superior court to exercise its discretion under A.R.S. § 12-341.01 and award them $152,592.50 in attorneys' fees.  The superior court denied Appellants' request for various reasons, including: (i) the legal issues "were [not] particularly novel"; (ii) Appellants actively litigated the case, moved the court to reinstate the case after it had been administratively dismissed in October 2018, and rejected a June 2019 settlement offer from the Weigeles; (iii) notwithstanding the jury verdict finding for Appellants on their breach of contract claims, the Weigeles' claims "had merit"; (iv) "[m]uch of [Appellants'] efforts were superfluous in achieving the ultimate result"; (v) the Rules of Civil Procedure did not place the burden on the Weigeles to make an initial draft of a joint report or the final joint pretrial statement; (vi) "[a] judgment for $152,592.50 in attorney fees for bringing a claim of $15,000 and losing on a [counter]claim worth $17,870 would send a chilling message to litigants with small meritorious claims"; (vii) Appellants engaged in overbilling; and (viii) "under a totality of the litigation test," the Weigeles were, arguably, the "successful party" on Appellants' claim of lost profits because "the court granted [the Weigeles'] motion for directed verdict on [Appellants'] claim for lost profits."

¶10           The superior court entered final judgment in January 2020. Appellants timely appealed.  We have jurisdiction under A.R.S. § 12-2101(A)(1).

## DISCUSSION

### I.    Motion for Directed Verdict.

¶11           Appellants argue the superior court erred by granting a motion for directed verdict on Appellants' $90,000 lost-profit damages claim.  A trial court should grant a motion for directed verdict "if the facts produced in support of the claim or defense have so little probative value, given the quantum of evidence required, that reasonable people could not agree with the conclusion advanced by the proponent of the claim or defense." *Orme Sch. v. Reeves*, 166 Ariz. 301, 309 (1990).  We review a trial court's grant of a directed verdict de novo, "viewing the evidence in the

light most favorable to the party opposing the motion." *Gemstar Ltd. v. Ernst & Young*, 185 Ariz. 493, 505 (1996).

¶12 Parties alleging lost-profit damages have the burden of "show[ing] the amount of their damages with reasonable certainty." *See Gilmore v. Cohen*, 95 Ariz. 34, 36 (1963). "While mathematical accuracy is not required in proving loss of future profits[,] such loss cannot be predicated upon conjecture or speculation." *McNutt Oil & Ref. Co. v. D'Ascoli*, 79 Ariz. 28, 34 (1955). Moreover, the party seeking lost-profit damages "should supply some reasonable basis for computing the amount of damage and must do so with such precision as, from the nature of his claim and the available evidence, is possible." *Gilmore*, 95 Ariz. at 36.

¶13 Appellants argue that Oliver presented sufficient evidence of lost profits to survive the motion for directed verdict. We disagree. Although Appellants characterize the spreadsheets displaying the monthly number of withdrawals made from their ATMs as "hard documentary evidence regarding the revenue/profit history of" ATM 1 AZ, the spreadsheets only provide ATM transaction data from a single month—April 2016—which preceded Appellants' purchase of a fifty-percent partnership in ATM 1 AZ. Appellants fail to point to any evidence in the record with which to compare the monthly data contained on the spreadsheets. Moreover, the spreadsheets themselves are merely "the monthly tallies" of the withdrawals made from ATM 1 AZ's machines and do not actually provide the business's revenue or profit history. The only way to determine how the transactions translated into revenue or profits is to rely on Oliver's testimony interpreting the spreadsheets as indicating that ATM 1 AZ made $3,829.50 from Emerald Palace and $410 combined from the other two locations in April 2016.

¶14 We agree with the superior court that Oliver's lost-profits testimony did not rise above mere "conjecture or speculation," *McNutt Oil*, 79 Ariz. at 34, and failed to provide "a reasonably certain factual basis for computation of lost profits," *Rancho Pescado, Inc. v. Nw. Mut. Life Ins. Co.*, 140 Ariz. 174, 184 (App. 1984). Oliver testified that ATM 1 AZ would have made $5,000 per month from its lease with Emerald Palace over the course of 18 months, but that estimate was based on installing a second ATM at the location. Appellants fail to provide any evidence that a second ATM could have been installed or that ATM 1 AZ was making $5,000 per month in profits from the ATM at Emerald Palace. Indeed, Oliver testified that the spreadsheets showed the ATM at Emerald Palace generated only $3,829.50 in April 2016, and neither the spreadsheets nor testimony clarify whether the total reflected revenue or profit. Oliver admitted that he did not make

a profits/loss statement for ATM 1 AZ and conceded that, aside from the April 2016 spreadsheets, he had no other evidence that proved Appellants suffered $90,000 in lost profits.

¶15            Nor did Appellants provide evidence explaining why they were entitled to 18 months of lost-profit damages. When asked why he was specifically seeking 18 months of lost profits, Oliver testified that he "wanted to be nice," and that it "just seems to be a standard in the industry." When further pressed on how he knew that 18 months was the industry standard, Oliver said that he had "talked to several people at different times, and that's how it is," and suggested that he had "learned [it] over the years of being alive."

¶16            Appellants argue that Oliver's testimony was "based on his business knowledge and experience." But Oliver admitted he had no experience in the ATM business prior to April 2016, his prior business experience consisted of "mess[ing] with" a general contractor's and real estate license, and ATM 1 AZ was the first business he had purchased. Appellants argue that Oliver's "relatively shorter experience with the ATM business must be balanced against the extreme simplicity of the ATM business" and contend that calculating lost-profit damages did not require much business experience. However, Appellants failed to provide any evidence to corroborate Oliver's claim that ATM 1 AZ would make $5,000 per month in profits from its ATM at Emerald Palace, and that such profits would continue for 18 months. *See Rancho Pescado*, 140 Ariz. at 184-85 (stating plaintiff "had the burden of proving with reasonable certainty the fact that it could raise catfish in the canal and . . . thereafter market them at a profit as well as proving with reasonable certainty how much profit it would have realized"). The superior court did not err in granting the motion for directed verdict.

## II.    Denial of Attorneys' Fees.

¶17            Appellants argue the superior court abused its discretion by denying their request for $152,592.50 in attorneys' fees. Trial courts have discretion under A.R.S. § 12-341.01 to award attorneys' fees to the prevailing party in a contract dispute. *Wheel Estate Corp. v. Webb*, 139 Ariz. 506, 508 (App. 1983). Trial courts consider various factors in determining whether attorneys' fees should be granted under A.R.S. § 12-341.01, including: (1) "[t]he merits of the claim or defense presented by the unsuccessful party"; (2) whether "[t]he litigation could have been avoided or settled and the successful party's efforts were completely superfluous in achieving the result"; (3) whether "[a]ssessing fees against the unsuccessful

party would cause an extreme hardship"; and (4) whether "[t]he successful party did not prevail with respect to all of the relief sought." *Associated Indem. Corp. v. Warner*, 143 Ariz. 567, 570 (1985). Additional factors for trial courts to consider include "the novelty of the legal question presented," and "whether the award in any particular case would discourage other parties with tenable claims or defenses from litigating or defending legitimate contract issues for fear of incurring liability for substantial amounts of attorney's fees." *Id.*

**¶18**        We review an attorney-fee order under A.R.S. § 12-341.01(A) for an abuse of discretion. *Peterson v. City of Surprise*, 244 Ariz. 247, 253, ¶ 25 (App. 2018). We may affirm the attorney-fee order "if it has any reasonable basis . . . ." *Tucson Estates Prop. Owners Ass'n v. McGovern*, 239 Ariz. 52, 56, ¶ 12 (App. 2016).

**¶19**        Appellants take issue with much of the superior court's reasoning in denying them an attorney-fee award. However, Appellants do not dispute the superior court's determination that "[a] judgment for $152,592.50 in attorney fees for bringing a claim of $15,000 and losing on a [counter]claim worth $17,870 would send a chilling message to litigants with small meritorious claims." This is not an unreasonable basis for denying attorneys' fees. *See Associated Indem.*, 143 Ariz. at 570 (approving the potential chilling effect on legitimate litigation as a proper factor to consider in determining whether to award attorneys' fees). Appellants therefore fail to establish that the superior court abused its discretion. *See Tucson Estates*, 239 Ariz. at 56, ¶ 14 (affirming denial of attorneys' fees because "a reasonable basis" supported the ruling, notwithstanding some "other factors" which "may [have] weigh[ed] in favor of Appellants").

## III.    Attorneys' Fees and Costs on Appeal.

**¶20**        Appellants request their trial and appellate attorneys' fees and costs under A.R.S. §§ 12-341.01, 12-342, and Arizona Rule of Civil Procedure ("ARCAP") 21. The Weigeles request their attorneys' fees and costs on appeal under A.R.S. §§ 12-341.01, -12-349, and ARCAP 21. In the exercise of our discretion, we deny both parties' requests for attorneys' fees. As the prevailing party on appeal, the Weigeles are entitled to their costs on appeal upon compliance with ARCAP 21. We deny Appellants' request for costs.

## CONCLUSION

**¶21** Because Appellants have shown no error, we affirm the superior court's judgment.



AMY M. WOOD • Clerk of the Court
FILED: AA

8